ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This disciplinary matter arises from a total of 42 counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against the respondent, Linward Martin, III, who is currently on interim suspension for threat of harm to the public.[1]
FORMAL CHARGES
On December 12, 2001, the ODC filed thirty-four counts of formal charges against respondent in the matter bearing the disciplinary board’s docket number 01-DB-119. These charges were amended on January 22, 2002 to add two additional counts. On November 21, 2002, the ODC filed a second set of six counts of formal charges against respondent in the disciplinary board’s docket number 02-DB-121. The two sets of formal charges were considered by separate hearing committees, *393 then Consolidated pursuant to an order of this court rendered on July 30, 2003. In re: Martin, 03-0818 (La.7/30/03), — So.2d -. On February 19, 2004, the disciplinary board filed in this court a single recommendation of discipline encompassing both matters involving respondent.
U01-DB-119 Counts 1 and 2
In October 1999, respondent settled a worker’s compensation claim on behalf of Delorise Henderson. Respondent had previously received written notice of a statutory lien for medical services provided to his client by Dr. Anthony Zuppardo, and by letter dated September 28, 1999, respondent agreed to protect Dr. Zuppar-do’s interest in the settlement of the worker’s compensation claim. Nevertheless, respondent failed to pay the sums owed to Dr. Zuppardo, totaling $1,222.
In August 2000, Dr. Zuppardo filed a complaint against respondent with the ODC. Respondent answered the complaint in September 2000, advising that he would pay Dr. Zuppardo. Thereafter, the ODC requested additional information concerning the matter, but respondent failed to reply to the supplemental requests for information.

Count S

Respondent represented Adam Sylve in a worker’s compensation claim against his former employer. In April 2000, respondent settled Mr. Sylve’s claim for $55,000. Mr. Sylve was unaware of the settlement and did not approve it. In August 2000, Mr. Sylve confronted respondent after learning of the settlement from the worker’s compensation judge. During the meeting, respondent confessed to Mr. Sylve that he had received the settlement proceeds, but was having financial problems and had spent the money. At respondent’s urging, Mr. Sylve signed a “Memorandum of Understanding,” stating that respondent’s law firm[2] would disburse Mr. Sylve’s portion of the settlement to him in four installments over a period of time. Respondent |3gave Mr. Sylve four post-dated checks drawn on the law firm’s client trust account. When Mr. Sylve presented the first check for payment on August 30, 2000, there were insufficient funds in the account to cover the check; two weeks later, the firm’s bank froze the trust account.
Mr. Sylve reported respondent’s conduct to the Orleans Parish District Attorney’s Office. On October 13, 2000, respondent was arrested and charged with felony theft, a violation of La. R.S. 14:67(A), stemming from the Sylve matter. State v. Martin, No. 419-252 on the docket of the Orleans Parish Criminal District Court. On July 9, 2001, respondent pleaded guilty as charged. On September 17, 2001, respondent was sentenced to serve five years at hard labor, suspended, and placed on active probation for five years. Respondent was also ordered to serve 52 weekends in Orleans Parish Prison beginning September 21, 2001 and ordered to pay $47,500 in restitution to Mr. Sylve.

Count k

In September 2000, Mr. Sylve filed a complaint against respondent with the ODC. On September 26, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a sub *394 poena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Count 5

In June 2000, respondent was retained to represent Bryan Saulsberry in a worker’s compensation claim against his former employer. Respondent failed to Bcommunicate with Mr. Saulsberry for a period of time, but by September 2000, he had settled the worker’s compensation claim for $24,000. Upon receipt of the settlement check, respondent deposited the funds into his law firm’s operating account, rather than a client trust account.
On September 5, 2000, respondent gave Mr. Saulsberry a cashier’s check representing a portion of his share of the settlement, and paid the remainder with a postdated check of $700 drawn on the firm’s operating account. When Mr. Saulsberry presented the $700 check for payment on September 8, 2000, there were insufficient funds in the account to cover the check. Mr. Saulsberry complained to respondent, who said that he would replace the check with a cash payment of $700 on September 11, 2000; however, respondent could not be located on that date. On September 15, 2000, Mr. Saulsberry deposited the $700 check into his own bank account. The check was subsequently returned by the drawee bank marked “Account Closed.”
Mr. Saulsberry reported respondent’s conduct to the Orleans Parish District Attorney’s Office. On March 12, 2001, respondent was arrested and charged with issuing worthless checks over $500, a violation of La. R.S. 14:71(A), stemming from the Saulsberry matter. State v. Martin, No. 421-356 on the docket of the Orleans Parish Criminal District Court. On September 17, 2001, respondent pleaded guilty as charged and was sentenced to serve three years at hard labor, suspended, and placed on active probation for three years.[3] Respondent was also ordered to serve 52 weekends in Orleans Parish Prison beginning September 21, 2001 and ordered to pay $715 in restitution to Mr. Saulsberry.
| fiCount 6
In September 2000, Mr. Saulsberry filed a complaint against respondent with the ODC. On October 23, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on January 4, 2001 and answer the complaint under oath. Respondent appeared on that date, but failed to produce the records that had been requested in conjunction with the ODC’s investigation. Respondent promised to produce the records, but did not do so, necessitating the issuance of a second subpoena.

Counts 7 and 8

Respondent represented a number of clients whom he referred to Dr. Steven Katz for evaluation and medical treatment. Respondent agreed to protect Dr. Katz’s interest in the settlement of the clients’ personal injury or worker’s compensation claims. Nevertheless, respondent failed to pay the sums owed to Dr. Katz.[4]
In September 2000, Dr. Katz filed a complaint against respondent with the *395 ODC. On November 6, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on January 18, 2001 and answer the complaint under oath. Respondent failed to appear on that date, but agreed to appear on February 2, 2001. On that date, respondent failed to produce the records that had been requested in conjunction with the ODC’s investigation.
| „Counts 9 and 10
In June 2000, Dorothy Brown retained respondent to represent her in two personal injury matters. Respondent periodically failed to communicate with Ms. Brown, but for the most part, he assured her that her cases were moving forward. Ms. Brown eventually learned that respondent had failed to enroll as her counsel of record and had failed to notify her of a deposition in one of the cases, despite receiving service of a subpoena on at least two occasions. As a result of respondent’s neglect, Ms. Brown’s cases were delayed.
In February 2001, Ms. Brown filed a complaint against respondent with the ODC. On March 19, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 11 and 12

In early 1998, Katherine Turnipseed paid respondent $2,000 to file a Chapter 13 bankruptcy proceeding on her behalf. Respondent filed the petition and supporting schedules, but in March 1998, the case was dismissed by the Bankruptcy Court for respondent’s failure to file a timely bankruptcy plan. Thereafter, respondent filed four more bankruptcy proceedings on behalf of Ms. Turnipseed, and forged her signature on the pleadings filed in connection with these proceedings. Between August 1998 and October 2000, all of these cases were dismissed by the Bankruptcy Court for respondent’s failure to file a timely bankruptcy plan, failure to pay filing fees, or failure to attend the requisite meeting of creditors. Ms. Turnipseed eventually lost her home |7in foreclosure and suffered a poor credit rating due to her numerous bankruptcy filings.
In March 2001, Ms. Turnipseed filed a complaint against respondent with the ODC. On April 3, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 13 and U

In August 1999, Mark Thomas Rihner retained respondent to represent him in a worker’s compensation and personal injury matter. Respondent filed suit on Mr. Rih-ner’s behalf, but failed to pay the filing fees to the clerk of court and failed to request that the petition be served upon the defendants. Respondent took no further action in the case and failed to communicate with his client, forcing Mr. Rih-ner to retain new counsel.
In March 2001, Mr. Rihner filed a complaint against respondent with the ODC. On April 18, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, *396 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 15 and 16

In 1999, Ronald Higgins retained respondent to represent him in two separate legal matters. Respondent neglected the matters, failed to communicate with Mr. Higgins, and failed to return Mr. Higgins’ files.
| sIn April 2001, Mr. Higgins filed a complaint against respondent with the ODC. On May 8, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 17 and 18

In 2000, Sidney Domangue paid respondent $700 to file a bankruptcy proceeding on his behalf. Respondent failed to communicate with Mr. Domangue and did not file the bankruptcy, forcing Mr. Domangue to retain new counsel. Respondent also failed to refund the unearned fee he was paid.
In April 2001, Mr. Domangue filed a complaint against respondent with the ODC. On May 17, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Count 19

On May 2, 2001, respondent was inter-imly suspended from the practice of law by order of this court in In re: Martin, 01-1189 (La.5/2/01), 787 So.2d 282. On May 3, 2001, respondent filed a petition seeking a temporary restraining order in an attempt to halt foreclosure proceedings against his client, Linda Johnson Wright. Standard Mortgage Corp. v. Linda Johnson A/K/A Linda Wright, No. 99-11656 on the docket of the Civil District Court for the Parish of Orleans. In his petition, respondent falsely asserted that Mrs. Wright had not been served with notification of the sheriffs sale of|athe property at issue. The trial court issued a temporary restraining order on May 3, 2001 and ordered that a hearing on permanent injunc-tive relief be held on May 14, 2001. Respondent failed to attend the hearing. The mortgage company was subsequently awarded attorney’s fees against respondent for various procedural defects in the TRO and in light of the false representations contained therein.

Count 20

In conjunction with the conduct subject of Count 19, a complaint was filed against respondent by counsel for Standard Mortgage Corporation. On May 31, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Count 21

On May 17, 2001, respondent was suspended from practice before the United States Bankruptcy Court for the Eastern District of Louisiana for his misconduct in numerous bankruptcy proceedings. In seven cases, respondent forged the debtors’ signatures on pleadings and failed to attend hearings, and as a result, contempt orders imposing sanctions were entered against him by the court. Furthermore, in three cases, the debtors’ bankruptcy proceedings were dismissed due to respondent’s failure to file a mailing matrix or a *397 timely plan, or his failure to pay filing fees even though fees had been tendered to him in advance. Finally, on May 3, 2001, the day after respondent was interimly suspended from the practice of law by order of this court, he attempted to file a pro se petition on behalf of a debtor when he had Unprepared the petition but had not included his name as attorney of record. The clerk of the Bankruptcy Court refused to accept the petition.

Count 22

In conjunction with the conduct subject of Count 21, a complaint was filed against respondent by United States Bankruptcy Judge Jerry A. Brown. On May 31, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 23 and 2k

Morris Bigner retained respondent to handle a worker’s compensation claim on his behalf. In the course of the litigation, respondent requested and received a copy of the transcript of a deposition given by Mr. Bigner in July 2000. However, respondent failed to pay the court reporter for the costs of the transcript, despite numerous requests. In January 2001, the court reporter demanded that Mr. Bigner pay for the transcript. Respondent assured Mr. Bigner that he would handle the matter, but he failed to do so. In March 2001, after he was threatened with a lawsuit by the court reporter for non-payment of the outstanding costs, Mr. Bigner personally paid the sum of $167.70.
In May 2001, Mr. Bigner filed a complaint against respondent with the ODC. On June 20, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter In served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 25 and 26

In May 1999, William Enines retained respondent to represent him in a personal injury matter. Respondent neglected the matter and failed to communicate with Mr. Enines.
In May 2001, Mr. Enines filed a complaint against respondent with the ODC. On June 20, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 27 and 28

Robert and Eileen James paid respondent $1,000 to file a Chapter 13 bankruptcy proceeding on their behalf. Respondent filed the initial pleadings but did not file a proper mailing matrix; he also failed to pay the appropriate filing fees to the Bankruptcy Court, even though the fees were paid by Mr. and Mrs. James in advance. As a result, their bankruptcy case was dismissed. Mr. and Mrs. James were forced to retain new counsel to complete their bankruptcy, and they were faced with possible foreclosure on their home due to respondent’s inaction. To date, respondent has not refunded the legal fee Mr. and Mrs. James paid, and he has not returned their file.
In June 2001, Mr. James filed a complaint against respondent with the ODC. On June 28, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply *398 to the complaint. The ODC thereafter | ^served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 29 and 30

Karen Thomas retained respondent to file a Chapter 13 bankruptcy proceeding on her behalf. She paid respondent $200 in attorney’s fees and $185 in filing fees, but respondent remitted only $5 in filing fees to the Bankruptcy Court. Respondent forged Ms. Thomas’ signature on several pleadings and failed to complete the bankruptcy proceeding. As a result, Ms. Thomas was forced to retain new counsel.
In June 2001, Ms. Thomas filed a complaint against respondent with the ODC. On July 11, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 31 and 32

In 1997, Michael James retained respondent to handle a personal injury matter. Respondent filed suit on Mr. James’ behalf, but failed to request that the petition be served upon the defendants. As a result, Mr. James’ suit was dismissed without prejudice in 1999. Respondent took no further action in the case and failed to communicate with his client.
In July 2001, Mr. James filed a complaint against respondent with the ODC. On July 18, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served 1 ^respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint under oath. Respondent failed to appear on that date.

Counts 33 and 3k

Desiree Black retained respondent to handle a worker’s compensation claim against her employer. On June 19, 2000, Ms. Black met with respondent to execute an affidavit relative to the proposed settlement of the case. Respondent informed Ms. Black that her claim would be compromised for $4,000 and that he would contact her upon his receipt of the settlement check and related documents. Thereafter, Ms. Black made numerous attempts to contact respondent, to no avail. Ms. Black then consulted another attorney for assistance. Ms. Black subsequently learned that her worker’s compensation claim had been settled by respondent on July 24, 2000 and that the settlement check and related documents had been hand-delivered to respondent on July 25, 2000. The $4,000 settlement check was endorsed by both payees, “Desiree Black and her attorney, Linward Martin, III,” and cashed on July 26, 2000. However, Ms. Black did not endorse the settlement check, nor did she receive any portion of the proceeds of the settlement of her worker’s compensation claim.
In June 2001, the ODC received a complaint against respondent filed on behalf of Ms. Black.[5] On July 26, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on September 5, 2001 and answer the complaint *399 under oath. Respondent failed to appear on that date.
| uCounts 35 and 36
In 1999, Michael Peters retained respondent to handle a worker’s compensation claim. Respondent neglected the matter, failed to communicate with Mr. Peters, and failed to return Mr. Peters’ file.
In August 2001, Mr. Peters filed a complaint against respondent with the ODC. On September 11, 2001, and again on October 23, 2001, the ODC forwarded a copy of the complaint to respondent by certified and regular United States mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on November 13, 2001 and answer the complaint under oath. Respondent failed to appear on that date.
02-DB-121

Counts 1 and 2

In March 2000, Audrey Applewhite, a resident of Mississippi, retained respondent to handle a worker’s compensation claim for her brother, who is physically and mentally incapacitated. Respondent neglected the matter, failed to communicate with Ms. Applewhite, and failed to return Ms. Applewhite’s file.
In September 2001, Ms. Applewhite filed a complaint against respondent with the ODC. On October 30, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on January 3, 2002 and answer the complaint under oath. Respondent failed to appear on that date.
Ii ¿Count 3
In 1999, Lynette Pierce retained respondent to represent her in a claim for damages arising out of an automobile accident. Respondent presumably accepted the representation on a contingent fee basis, but he did not provide Ms. Pierce with a written agreement to that effect.
Respondent did not diligently handle the property damage portion of Ms. Pierce’s case; it was almost a year after the accident before Ms. Pierce was compensated for the damage to her vehicle. Respondent eventually settled Ms. Pierce’s personal injury claim for $5,800. Respondent failed to account to Ms. Pierce for the proceeds of her settlement, but he paid her $3,900 and told her that her medical expenses would be paid by the tortfeasor’s insurer in a separate check. In September 2001, Ms. Pierce received correspondence from an attorney representing one of her medical providers, seeking to collect unpaid medical expenses in the amount of $3,824 plus interest, costs, and attorney’s fees.
In addition to the matter arising out of the automobile accident, Ms. Pierce requested that respondent file suit on her behalf against a mortgage company. Respondent never filed the lawsuit, but instead recommended that Ms. Pierce file for bankruptcy to keep from losing her home in a foreclosure proceeding. Respondent requested $185 for filing fees, which Ms. Pierce paid in February 2001; however, Ms. Pierce later learned that respondent had been suspended from practicing in Bankruptcy Court and that her bankruptcy case was dismissed for respondent’s failure to file a proper mailing matrix. Ms. Pierce also learned that respondent had remitted only $5 in filing fees to the Bankruptcy Court and, without her consent, had requested permission to pay the filing fees in installments.
1 ifíCount Ip
In conjunction with the conduct subject of Count 3, Ms. Pierce filed complaints *400 against respondent with the ODC. On February 20, 2002, and again on March 5, 2002, the ODC forwarded a copy of the complaints to respondent by certified and regular United States mail. Respondent failed to reply to the complaints. The ODC thereafter served respondent with a subpoena compelling him to appear on May 2, 2002 and answer the complaints under oath. Respondent failed to appear on that date.

Counts 5 and 6

In November 1996, Gerald Barnes retained respondent to handle a worker’s compensation claim on his behalf. Respondent referred Mr. Barnes for medical treatment and made contact with the insurance company involved in the claim, but thereafter, he neglected the case and failed to communicate with Mr. Barnes. In September 2000, respondent gave Mr. Barnes a $150 check to assist him in paying his child support; however, the check was returned NSF. Mr. Barnes subsequently discharged respondent and requested the return of his files. Respondent failed to comply with Mr. Barnes’ request.
In January 2002, Mr. Barnes filed a complaint against respondent with the ODC. On February 20, 2002, and again on March 13, 2002, the ODC forwarded a copy of the complaint to respondent by certified and regular United States mail. Respondent failed to reply to the complaint.
DISCIPLINARY PROCEEDINGS
As previously noted, the ODC filed two separate sets of formal charges against respondent. Collectively, the 42 counts of formal charges allege numerous violations |17by respondent of the Rules of Professional Conduct, as follows: Rules 1.1(a) (failure to provide competent representation to a client), 1.2 (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15(a)(b) (safekeeping property of clients or third persons), 1.16(d) (obligations upon termination of the representation), 3.1 (meritorious claims and contentions), 3.2 (failure to make reasonable efforts to expedite litigation), 3.3(a) (candor toward the tribunal), 3.4(b) (a lawyer shall not falsify evidence), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 5.5(a) (engaging in the unauthorized practice of law), 7.3(d) (lawyers shall not state or imply that they practice in a partnership or other organization when that is not the fact), 8.1(a) (knowingly making a false statement of material fact in connection with a disciplinary matter), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(e) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation).
Respondent was served with both sets of formal charges. He failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written [isarguments and documentary evidence on the issue of sanctions. Respondent filed *401 nothing for the hearing committee’s consideration in either matter.

Hearing Committee Recommendations

01-DB-119
The hearing committee adopted the facts and rule violations as set forth in the formal charges. Finding no mitigating factors are present, the committee recommended that respondent be permanently disbarred. The committee further recommended that respondent be ordered to pay restitution and that he be charged with all costs and expenses of these disciplinary proceedings.
02-DB-121
The hearing committee generally agreed that respondent violated the Rules of Professional Conduct as charged in the formal charges. The committee recommended that respondent be disbarred.
Neither respondent nor the ODC objected to the hearing committees’ recommendations.

Disciplinary Board Recommendation

After reviewing the consolidated matters, the disciplinary board agreed that the facts alleged and deemed admitted support a finding that respondent violated each professional rule cited in the formal charges (though not in every instance where the rule was cited). The board found respondent violated duties owed to his clients, to the legal system, to the public, and as a professional. Respondent’s conduct was knowing in some instances and intentional in others. As a result of his conduct, | ^respondent caused actual damage, which was serious or potentially serious, to his clients whose legal matters were neglected, delayed, dismissed, and abandoned. As a result of respondent’s misconduct, some clients lost their causes of action, while others have suffered bad credit ratings, foreclosure on their homes, and garnishment of their wages. Respondent stole money from his clients, and for the most part has failed to pay restitution. His criminal acts caused serious injury not only to his clients, but also to the public and the legal profession. He damaged the profession, his clients, and the courts by engaging in the unauthorized practice of law when he knew or should have known he was on interim suspension. He also caused damage to the legal system by failing to expedite litigation, failing to follow court procedures, and by submitting an affidavit he knew or should have known contained false information. Additionally, respondent’s failure to respond to the ODC’s requests delayed the disciplinary process, diverted its limited resources, and impaired the system’s orderly functioning. Considering the ABA’s Standards for Imposing Lawyer Sanctions, as well as the prior jurisprudence involving multiple counts of conversion, neglect, failure to communicate, lack of candor, the unauthorized practice of law, and dishonest and criminal behavior, the board determined that the baseline sanction for respondent’s misconduct is disbarment.
In aggravation, the board recognized respondent’s dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. The board found no mitigating factors are present.
In light of the seriousness of respondent’s misconduct, and considering the absence of mitigating factors, the board then turned to a discussion of the sanction of [ gnpermanent disbarment. Respondent’s conduct fits within Guideline 1 of the permanent disbarment guidelines, which provides for permanent disbarment when an *402 attorney engages in “repeated or multiple instances of intentional conversion of client funds with substantial harm.” The facts as admitted suggest that respondent intentionally converted client funds on at least three occasions — in Count 3 of 01-DB-119, respondent converted $47,500 from Mr. Sylve; in Count 5, he converted $700 from Mr. Saulsberry; and in Count 33, he converted Ms. Black’s settlement check in the amount of $4,000.[6] Furthermore, Guideline 8 is applicable. That guideline provides that permanent disbarment may be warranted for an attorney who practices law “following notice” of suspension. The deemed admitted facts suggest that respondent practiced law aftef he knew or should have known he had been placed on interim suspension.
Concluding that respondent’s conduct is “some of the most serious professional misconduct an attorney can commit,” and that respondent is a threat to his clients, the profession, and the public, the board recommended respondent be permanently disbarred. The board further recommended that respondent be required to account to the complainants and make restitution as appropriate, and that he be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an 121independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
The deemed admitted facts in this case reveal a pattern of professional misconduct that is unquestionably serious in nature and in scope. Respondent neglected the legal matters of numerous clients, failed to communicate with his clients, failed to account for and refund unearned fees, failed to timely pay third-party medical providers, engaged in the unauthorized practice of law after being placed on interim suspension by this court, and failed to cooperate with the ODC in more than twenty separate disciplinary investigations. Respondent has also been convicted of felony criminal charges stemming from his conversion of funds belonging to two clients. All told, respondent’s conduct violates Rules 1.1(a), 1.2, 1.3, 1.4, 1.5, 1.15, 1.16(d), 3.1, 3.2, 3.3(a), 3.4(b), 3.4(c), 5.5(a), 7.3(d), 8.1(a), 8.1(b), 8.1(c), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Having found professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct represents a significant breach of his professional duties and obligations. Indeed, we have *403 seldom been called upon to discipline a lawyer who possesses such a complete and total disregard for the welfare of his 122elients, the public, the legal system, and our profession. We find the following aggravating factors are present in this case: dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, indifference to making restitution, and illegal conduct. We are unable to discern a single mitigating factor from the voluminous record before us.
Under these circumstances, it is clear that disbarment is appropriate. The sole remaining question is whether respondent’s conduct is so egregious that he should be permanently prohibited from seeking readmission to the practice of law.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment. For purposes of the instant case, Guidelines 1 and 8 are relevant. Those guidelines provide:
GUIDELINE 1. Repeated or multiple instances of intentional conversion of client funds with substantial harm.
GUIDELINE 8. Following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred.
Guideline 1 is clearly applicable to this case. Respondent converted more than $50,000 in settlement funds owed to his clients. His failure to account for and refund unearned legal fees also resulted in a conversion of funds to the detriment of his clients. When this conduct is considered in light of respondent’s demonstrated indifference to making restitution in these matters, the substantial harm is apparent. 12sLikewise, Guideline 8 is implicated, as the undisputed evidence shows respondent continued to represent clients after his license to practice law was suspended by this court in May 2001.
These proceedings have convincingly established that respondent does not possess the moral fitness to practice law and that he poses a threat of danger to the public in the event he is permitted to resume practicing law. Respondent has disregarded and ignored his obligation to uphold the high standards of honesty and righteousness that he assumed when he took the oath as a member of the bar of this state. Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). He has used his law license not to foster the high standards of the profession, but to exploit his clients for his own benefit. This court cannot and will not tolerate such conduct. Without question, respondent must be permanently disbarred.
Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that the name of Linward Joseph Martin, III, Louisiana Bar Roll number 24542, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited *404 from being readmitted to the practice of law in this state. Respondent is ordered to furnish complete accountings and full restitution to the clients and third persons subject of the formal charges. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, ] g4§ 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. On April 24, 2001, the ODC filed a motion for interim suspension pursuant to Supreme Court Rule XIX, § 19.2 based on some of the misconduct at issue in this case. We granted that motion on May 2, 2001. In re: Martin, 01-1189 (La.5/2/01), 787 So.2d 282.

. The letterhead on which the “Memorandum of Understanding” is printed indicates the name of respondent’s firm as "Martin, Shepherd, and Favors L.L.C.” However, the Louisiana Secretary of State has no record of a limited liability company qualified under that name.

. This sentence was consecutive with that imposed by the Criminal District Court in docket number 419-252, subject of Count 3 of the instant formal charges.

. It is difficult to ascertain the number of clients and the dollar amounts involved in this matter; however, we note that Dr. Katz's complaint listed more than 40 clients for whom medical expenses totaling more than $65,000 remained outstanding.

. In September 2001, Ms. Black reported respondent's conduct to the Orleans Parish District Attorney's Office. By letter dated April 16, 2002, the Economic Crime Unit of the District Attorney's Office notified the ODC that respondent made full restitution to Ms. Black on April 11, 2002, "and that we have closed our investigation accordingly.”

. As previously noted, respondent has made full restitution to Ms. Black.