ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
_J/This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, F. Scott Straub, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1]
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed two sets of formal charges against respondent, consisting of a *1124 total of twelve counts of misconduct. The charges were considered by separate hearing committees before being consolidated by order of the disciplinary board. The board then filed in this court a single recommendation of discipline encompassing both sets of formal charges.

05-DB-076

Count I — The Gilcrease Matter
In May 2002, Ralph Gilcrease hired respondent to handle the interdiction of his wife. He paid respondent $800 toward an agreed-upon fee of $2,000, with the balance to be paid in monthly installments. Thereafter, respondent failed to obtain 12medical records, repeatedly failed to appear for hearings, and did not respond to Mr. Gil-crease’s telephone calls and correspondence, including a request for his file in May 2003.
In June 2003, Mr. Gilcrease filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint despite the numerous notices sent by the ODC.
The ODC alleged that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15 (failure to provide an accounting), 1.16 (obligations upon termination of the representation), and 8.1(c) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
Count II — The Bennett Matter
In April 2003, Sandra Bennett hired respondent to handle the succession of her grandparents. Respondent agreed to handle the matter for the cost of the filing fee, and Ms. Bennett paid respondent the $200 filing fee. Thereafter, respondent failed to file the succession and used the $200 for his personal purposes. Respondent also failed to communicate with Ms. Bennett or return her telephone calls. Ms. Bennett sent three certified letters to respondent seeking the return of her file and a refund of the filing fee, but respondent did not respond to the letters.
In December 2003, Ms. Bennett filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint but did return Ms. Bennett’s $200.
| sThe ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.15 (safekeeping property of clients or third persons), and 8.1(c) of the Rules of Professional Conduct.
Count III — The Harris Matter
In September 2003, Ellen Harris hired respondent to handle a community property settlement, paying him $750. Thereafter, respondent lost Ms. Harris’ file and relocated out of state without notifying her. Respondent did not complete the community property settlement and did not refund any of the fee.
In February 2004, Ms. Harris filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6) (failure to refund an unearned fee), and 8.1(c) of the Rules of Professional Conduct.

14Count TV— The Thomas Matter

In December 2002, Angela Thomas hired respondent to represent her in a criminal matter, paying him $5,000. Thereafter, respondent failed to attend several pre-trial hearings and relocated out of state without notifying Ms. Thomas, forcing her to obtain other counsel. He also did not withdraw from the case or refund the unearned portion of the fee.
In February 2004, Ms. Thomas filed a complaint against respondent with the *1125 ODC. Respondent failed to respond to the complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6), and 8.1(c) of the Rules of Professional Conduct.
Count V — The Silvernail Matter
In July 2003, Shirley Silvernail hired respondent to handle her mother’s succession, paying him $1,500. Respondent neglected the matter and abandoned his law practice to move out of state. He did not refund any portion of the fee, despite Ms. Silvernail’s requests that he do so.
In February 2004, Ms. Silvernail, through her new attorney, filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5 (fee arrangements), and 8.1(c) of the Rules of Professional Conduct.
Count VI — The Doyle Matter
In September 2003, Christopher Doyle hired respondent to handle a breach-of-contract claim against a landscape contractor, paying him $750. Thereafter, respondent failed to communicate with Mr. Doyle and abandoned his law practice to move out of state. He did not refund any portion of the fee.
In February 2004, Mr. Doyle filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6), and 8.1(c) of the Rules of Professional Conduct.
Count VII — The Farmer Matter
In July 2003, Sherri Farmer hired respondent to handle her divorce, paying him $1,000. Thereafter, respondent failed to communicate with Ms. Farmer and did not obtain the promised divorce. Instead, he abandoned his law practice to move out of state. He did not refund any portion of the fee paid by Ms. Farmer.
|fiIn June 2004, Ms. Farmer filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6), and 8.1(c) of the Rules of Professional Conduct.
Count VIII — The Kessee Matter
In May 2003, Earnestine Kessee hired respondent to handle her son’s criminal matter, paying him $17,500. Respondent enrolled as counsel but then sought and obtained numerous continuances, which impeded the progress of the case. Ms. Kessee eventually terminated the representation. Thereafter, respondent abandoned his law practice to move out of state. He did not communicate with Ms. Kessee regarding the return of the unearned fee, and he did not refund any portion of the fee.
In January 2005, Ms. Kessee filed a complaint against respondent with the ODC. Respondent failed to claim the certified mail containing the notice of the complaint and has never responded to the complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6), and 8.1(c) of the Rules of Professional Conduct.

Formal Charges

In September 2005, the ODC filed eight counts of formal charges against respondent. Respondent was served with the formal charges via certified mail but failed to answer. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary *1126 | evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

After considering the ODC’s deemed admitted submission, the hearing committee determined that the formal charges are deemed admitted and proven by clear and convincing evidence. The committee also determined that it has been deemed admitted that respondent violated Rules 1.3, 1.4, 1.15, 1.16, and 8.1(c) on numerous occasions. The committee found no mitigating factors, and noted that respondent never responded to any of the complaints, which involved complete neglect of client legal matters and retaining unearned fees.
Under these circumstances, the committee recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s report.

06-DB-042

Count I — The Giles Matter
In May 2001, Martha Giles hired respondent to handle her husband’s criminal matter. She paid respondent $20,000 to handle the matter through trial and $5,000 to handle an appeal of his conviction. Respondent handled the matter through trial but failed to file the promised appeal. Thereafter, he abandoned his law practice.
In December 2003, Mrs. Giles filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
|7The ODC alleged that respondent’s conduct violated Rules 1.3, 1.5(f)(6), and 8.1(c) of the Rules of Professional Conduct.
Count II — The Black Matter
In May 1999, Harold Black hired respondent to handle legal matters for both his niece and his elderly mother. During his representation of Mr. Black’s mother, respondent requested and obtained a $2,000 loan from her which he agreed to repay within six months. Thereafter, respondent failed to repay the loan and refused to discuss the loan with Mr. Black. Respondent also failed to provide any type of accounting regarding the settlement of the two legal matters. Furthermore, respondent did not return telephone calls or respond to Mr. Black’s numerous letters.
In January 2004, Mr. Black filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.8 (conflict of interest/prohibited transactions with a client), 1.15(e) (disbursement sheet), and 8.1(c) of the Rules of Professional Conduct.
Count III — The Williams Matter
In December 2002, Alvin Williams hired respondent to handle his criminal matter, paying him $10,000. Respondent did not enroll as counsel, performed no substantial legal services, and failed to communicate with Mr. Williams. Thereafter, respondent abandoned his law practice and did not refund any portion of the fee.
In February 2004, Mr. Williams filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
|sThe ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6), and 8.1(e) of the Rules of Professional Conduct.
Count IV — The Canada Matter
In 1999, Frank Canada hired respondent to handle his divorce and community property settlement, paying him $2,200. Respondent filed a petition for divorce on Mr. Canada’s behalf, which was granted in 2000. However, respondent took no action to address the community property issue. Thereafter, respondent abandoned his law *1127 practice and did not refund any portion of the fee.
In March 2004, Mr. Canada filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.

Formal Charges

In July 2006, the ODC filed four counts of formal charges against respondent. Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
| ¡¡Hearing Committee Report
After considering the ODC’s deemed admitted submission, the hearing committee found that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. The committee also found that respondent acted knowingly and intentionally in injuring his clients. The committee further determined that the baseline sanction is disbarment.
In aggravation, the committee found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1998), and indifference to making restitution. In mitigation, the committee found that respondent has no prior disciplinary record.
Based on these findings, the committee recommended that respondent be disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s report.

Disciplinary Board Recommendation

05-DB-076 & 06-DB-Qm

After reviewing the consolidated matters, the disciplinary board determined that the factual allegations of the formal charges have been deemed admitted and a review of the documentary evidence reinforces those allegations. Therefore, the hearing committees’ factual conclusions that respondent neglected multiple matters, failed to communicate with clients, failed to refund unearned fees, and entered into | inprohibited financial arrangements with a client are well supported. The board found that the record supports the violations of the Rules of Professional Conduct as alleged in the formal charges. Additionally, the board found that respondent violated Rule 1.16(d) (obligations upon termination of the representation) in the Black matter by failing to repay the loan he obtained from Mrs. Black.
Based on these findings, the board determined that respondent knowingly and intentionally violated duties owed to his clients and the legal profession. He converted several thousand dollars belonging to his clients, causing them serious injury. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is disbarment.
In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the *1128 rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. The sole mitigating factor found by the board is the absence of a prior disciplinary record.
Turning to the issue of an appropriate sanction, the board determined that permanent disbarment may be warranted under Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines. The board further noted that this court has held that failing to refund unearned attorney’s fees amounts to conversion of client funds. See In re: Deshotels, 03-2060 (La.12/12/03), 863 So.2d 507. This court has also permanently disbarred an attorney based on Guideline 1 where the attorney abandoned multiple clients and converted them funds. See In re: Martin, 04-0444 (La.9/3/04), 883 So.2d 392. Like the attorney in Martin, respondent has converted thousands of dollars in funds belonging to his clients. He was repeatedly contacted by his clients for refunds, and was confronted with their complaints by the ODC, yet he failed to make restitution and fled to another state. Thus, like the attorney in Martin, respondent has displayed an indifference to the consequences of his misconduct and has left substantial client harm to follow in his wake.
Under these circumstances, the board recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions | i2that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The deemed admitted facts in this matter indicate that respondent neglected numerous legal matters, failed to communicate with numerous clients, failed to refund unearned fees,[2] and failed to cooper *1129 ate with the ODC in its investigations. In the Black matter, Count II of 06-DB-042, respondent obtained a loan from his client and then failed to repay the loan. These facts indicate that he has violated the Rules of Professional Conduct as alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s conduct was both knowing and intentional, and it caused substantial harm to his clients. The baseline sanction is disbarment. The record supports the aggravating and mitigating factors found by the disciplinary board.
Turning to the issue of an appropriate sanction, we agree with the board that Guideline 1 of the permanent disbarment guidelines listed in Appendix E of Supreme |13Court Rule XIX is applicable in this matter. In accepting fees, then failing to do any substantial work, respondent converted more than $40,000 in client funds. He has abandoned his law practice and appears to have no intention of ever providing refunds of the unearned fees. In In re: Alleman, 07-2060 (La.5/30/08), 982 So.2d 814, we permanently disbarred an attorney for similar conduct.
Accordingly, we will adopt the board’s recommendation and permanently disbar respondent.
DECREE
Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, it is ordered that the name of F. Scott Straub, Louisiana Bar Roll number 25515, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this State. It is further ordered that respondent render an accounting to his clients subject of the formal charges and make restitution of any unearned fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent has been ineligible to practice law in Louisiana since September 7, 2004 for failure to pay his bar dues and the disciplinary assessment; since February 4, 2005 for failure to comply with the mandatory continuing legal education requirements; and since November 30, 2007 for failure to file a trust account disclosure form.

. In all, respondent collected $64,700 in advance fees from his clients subject of both sets of formal charges. With the exception of the Giles matter, Count I of 06-DB-042 (in which respondent handled the matter through trial, entitling him to the $20,000 fee paid by Ms. Giles), and the Canada matter, Count IV of 06-DB-042 (in which respondent filed the petition for divorce, entitling him to a portion of the $2,200 fee paid by Mr. Canada), it does not appear from the record that respondent performed any meaningful legal work on behalf of his clients which would entitle him to the fees he was paid.