ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
_J_jThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, William J. Aubrey, an attorney li *525 censed to practice law in Louisiana but currently on interim suspension pursuant to our order in In re: Aubrey, 02-2535 (La.10/23/02), 830 So.2d 293.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed two sets of formal charges against respondent. The first set, bearing the disciplinary board’s docket number 01-DB-Ó72, was filed on July 10, 2001 and consists of five counts of misconduct. The second set, bearing the disciplinary board’s docket number 04-DB-082, was filed on October 15, 2004 and consists of four counts of misconduct.

01-DB-072

Count I — The Holland,/Gearhart Matter
In October 1994, Julia and Jonathan Holland and Heather and David Gearhart hired respondent to handle a personal injury matter stemming from an automobile accident. In October 1995, petitioner filed suit on behalf of his clients against GEI-CO, the liability insurer, and USAA, the Hollands’ UM insurer.
lain January 1996, GEICO provoked a concursus proceeding and deposited $20,000, its policy limits, into the registry of the court. Respondent assisted in settling the concursus proceeding, and pursuant to a February 1997 stipulated judgment, respondent’s clients received $8,158.88 of the concursus funds.[1]
Thereafter, respondent neglected the USAA claim and failed to properly communicate with his clients.[2]
In its formal charges, the ODC alleged that respondent’s conduct in the Holland/Gearhart matter violated the following Rules of Professional Conduct: Rules 1.1 (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Count II — The Landry Matter
In June 1995, Jacqueline Landry hired respondent to handle a personal injury matter. After filing suit on behalf of Ms. Landry, respondent settled the matter for $15,750 in April 1998. Respondent endorsed Ms. Landry’s name on the settlement check and deposited the funds into his trust account on April 20, 1998. In May 1998, respondent disbursed $6,486.79 to Ms.. Landry’s doctor as payment of her medical |sbill. On May 30, 2000, respondent provided Ms. Landry with a check for $6,800 as her portion of the settlement.
However, between April 20, 1998 and May 30, 2000, respondent’s trust account balance repeatedly fell below $9,263.21, the balance of Ms. Landry’s settlement still in the account. Respondent also misled Ms. Landry about the settlement and stalled *526 payment of her funds. Furthermore, respondent withheld $1,241 from Ms. Landry’s settlement as medical expenses to be paid. However, he failed to disburse these funds to either Ms. Landry or her medical providers.
In its formal charges, the ODC alleged that respondent’s conduct in the Landry matter violated the following Rules of Professional Conduct: Rules 1.3, 1.4, 1.15 (safekeeping property of clients or third parties), 8.4(a), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d).
Count III — The Failure to Cooperate Matter
Respondent failed to respond to the ODC’s letter requesting that he forward copies of his trust account bank statements. Consequently, the ODC subpoenaed respondent to produce the bank statements. While respondent appeared on June 30, 2000 pursuant to the subpoena, he failed to produce the bank statements. During his sworn statement given that date, respondent agreed to produce within two weeks his bank statements for the period between April 1, 1998 and June 30, 2000. However, respondent failed to do so. On July 28, 2000, respondent again promised to provide the bank statements; thereafter, he again failed to do so. Consequently, he was served with another subpoena to produce the bank statements. In response, respondent faxed Lto the ODC his bank statements for the period between April 1998 and June 1998. Therefore, the ODC served respondent with another subpoena. However, despite being served a third time, respondent failed to produce the bank statements.
In its formal charges, the ODC alleged that respondent’s conduct violated the following Rules of Professional Conduct: Rules 1.15(a) (failure to keep complete trust account records), 3.3(a)(2) (candor toward the tribunal), 3.4(a) (unlawfully obstructing another party’s access to evidence), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 3.4(d) (failure to make reasonable efforts to comply with an opposing party’s discovery request), 4.4 (respect for rights of third persons), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) (failure to cooperate with the ODC in its investigation). The ODC also alleged that respondent violated Supreme Court Rule XIX, § 9(c) (knowing failure to respond to a lawful demand from a disciplinary authority).
Counts IV & V — The Bronzoulis Matter
In August 1998, Mikel Bronzoulis hired respondent on a contingency basis to represent him in tobacco litigation. Respondent neglected the matter, failed to communicate with Mr. Bronzoulis, and failed to provide him with any evidence of any meaningful action on his behalf.
In February 2001, Mr. Bronzoulis filed a complaint against respondent with the ODC. Respondent received notice of the complaint on April 2, 2001 but failed to respond.
In its formal charges, the ODC alleged that respondent’s conduct in the Bronzoul-is matter violated the following Rules of Professional Conduct: Rules 1.3,1.4, 8.1(b) (knowing failure to respond to a lawful demand from a disciplinary |sauthority), 8.1(c), 8.4(a), 8.4(d), and 8.4(g). The ODC also alleged that respondent violated Supreme Court Rule XIX, § 9(c).

0I-DB-082

Counts I & II — The Law Office Abandonment Matter
In August 2002, while in an “Of Counsel” relationship with the law firm of Do- *527 mengeaux, Wright, Roy & Edwards (“DWRE”) in Lafayette, respondent abandoned his law practice without notice to either DWRE or his clients. At the time he abandoned his law practice, respondent was still representing numerous clients, including, but not limited to, Stephen Breaux (worker’s compensation and bankruptcy), Alton Senegal, Jr. (worker’s compensation), Ronald Arceneaux (worker’s compensation, child custody, and personal injury), Freddie Dartez (domestic), Cecile Wiltz (personal injury), Sharon Guillory (divorce), Derek Evans (child custody and support), Robert LeRoy, Sr. (personal injury), Raehelle Holland (personal injury), and Angel Miller (child custody and support). Neither his clients, opposing counsel, nor the courts were able to contact respondent..
At some point, respondent apparently went to DWRE’s offices after hours and removed his clients’ files, numbering as many as 150. However, he did not establish a new law office. Instead, he neglected his clients’ cases, failed to communicate with them, failed to return their file materials, failed to provide them with account-ings, and failed to refund unearned fees.
Between August 2001 and January 2003, the above-named clients filed complaints against respondent with the ODC. Additionally, in September 2002, James Roy filed a complaint against respondent with the ODC on behalf of DWRE. | ^Respondent failed to respond to these complaints. He also failed to otherwise cooperate with the ODC in its investigation of the complaints.
In its formal charges, the ODC alleged that respondent’s conduct violated the following Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d) (obligations ■ upon termination of the representation), 8.3 (failure to report professional misconduct), 8.4(a), 8.4(c), 8.4(d), and 8.4(g).
Counts III & IV — The Guidry Matter
In June 1994, respondent enrolled as counsel for William Guidry, plaintiff in an ongoing personal injury lawsuit captioned Guidry v. Speer, No. 92-C-0739 on the docket of the 27th Judicial District Court. Previously, in September 1993, USF & G filed an intervention and lien to recover $57,659.61 in worker’s compensation funds.
Without his client’s knowledge or consent, respondent settled Mr. Guidry’s suit for $114,500. Thereafter, again without his client’s knowledge or consent, respondent endorsed Mr. Guidry’s name on the settlement checks. On August 14,1995, he deposited the checks into his trust account. However, respondent failed to disburse the settlement proceeds to either Mr. Guidry or USF & G. He also deceived his client about the status of the suit, failed to return the settlement release to the defense attorney, and failed to provide his client with an accounting of the settlement funds. Furthermore, during the time period respondent should have been holding the settlement funds in his trust account because he had not yet disbursed them, the balance of the account fell below the settlement amount on several occasions, one of the lowest amounts being $31.57 in July 1998.
|7Coincidentally, in July 1998, the trial court ordered respondent to pay USF & G $57,659.61 as its portion of the settlement proceeds. Respondent failed to do so and was found in contempt of court in May 2002.
Respondent represented Mr. Guidry in another personal injury lawsuit captioned Guidry v. Haydel, No. 56587 on the docket of the 16th Judicial District Court. Without his client’s knowledge or consent, respondent settled the suit for $8,110. Furthermore, again without his client’s knowledge or consent, respondent en *528 dorsed Mr. Guidry’s name on the settlement check. On December 7, 1999, he deposited the check into his trust account. However, respondent failed to disburse the settlement proceeds to Mr. Guidry. He also deceived his client about the status of the suit, failed to return the settlement release to the defense attorney, and failed to provide his client with an accounting of the settlement funds.
In its formal charges, the ODC alleged that respondent’s conduct in the Guidry matter violated the following Rules of Professional Conduct: Rules 1.4, 1.15, 8.4(a), 8.4(c), and 8.4(d).
DISCIPLINARY PROCEEDINGS
In 01-DB-072, respondent answered the formal charges and generally denied any misconduct. The matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee on November 29, 2001. The ODC submitted documentary evidence, including the depositions of Julia Holland, Heather Gearhart, and Collier McCall as well as respondent’s June 30, 2000 sworn statement. The ODC called Jacqueline Landry, James Pate (opposing counsel in the Landry matter), Mikel Bronzoulis, and Eddie Landry (witness in the Bronzoulis matter) to testify before the committee. Respondent failed to appear for the hearing.
| sIn 04-DB-082, respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
Both the hearing committee and the disciplinary board considered the consolidated matters in their respective reports and recommendations.

Hearing Committee Recommendation

Findings in 01-DB-072

After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings as follows:
Respondent took no further'action in the Holland/Gearhart matter following the disbursal of the GEICO funds. He failed to return Ms. Holland’s phone calls and failed to settle the UM claim despite two requests by Ms. Holland to do’ so. When Ms. Holland attempted to' obtain new counsel, she was told the abandonment delays on the UM claim had run. She granted her father power of attorney to settle the claim, which he was able to do within a couple of months.
In the Landry matter, respondent endorsed Ms. Landry’s name on the settlement check and deposited it into his trust account on April 20,1998. Respondent did not pay Ms. Landry her portion of the proceeds until May 30, 2000. During this time, respondent misled his client about the settlement and stalled payment of her funds. After paying her doctor in May 1998, the remaining account balance in respondent’s trust account was $9,263.21, which amount respondent Rshould have maintained until the final accounting was presented and paid. However, on May 8, 1998, the trust balance was $4,550.81, and on August 26, 2001, the trust balance was $31.57. As of June 30, 2000, respondent had disbursed a total of $14,509 of Ms. Landry’s settlement funds, including $1,022.21 to himself as his fee, leaving a remaining unpaid balance to Ms. Landry of $1,241.
*529 In the failure to cooperate matter, respondent was served with three subpoenas requiring that he produce his trust account records for the period between April 1, 1998 and June 30, 2000. Respondent failed to produce the required records, and the ODC had to subpoena same directly from the bank.
In the Bronzoulis matter, respondent was retained on a contingency basis to represent Mr. Bronzoulis in tobacco litigation. Respondent failed to communicate with Mr. Bronzoulis. He also neglected the matter and failed to provide his client with any evidence that he took any meaningful action in the matter. When Mr. Bronzoulis filed a complaint against respondent, he failed to respond to the complaint and failed to cooperate with the ODC in its investigation. Respondent also failed to appear at the formal hearing of these matters.
Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct and Supreme Court Rule XIX as alleged in the formal charges. After an analysis of the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is disbarment or suspension. Aggravating factors present are dishonest or selfish motive, a pattern of misconduct, multiple offenses, and bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency. Additionally, respondent’s failure to communicate with his clients led to injury or potential injury. The committee found no mitigating factors.
| findings in 0I-DB-082
After considering the ODC’s submission, the committee determined that respondent abandoned his law practice without notice to DWRE or his clients, making himself unavailable to his clients. As to the specific clients who filed complaints, the committee found the following:
1) Respondent neglected Stephen Breaux’s case, which prescribed, and falsely informed Mr. Breaux he was handling the case. Respondent also refused to provide Mr. Breaux with copies of his work product.
2) Respondent failed to forward Alton Senegal’s file to his new attorneys, who withdrew from the case after trying to contact respondent for four weeks. Respondent also failed to prepare discovery responses on behalf of Mr. Senegal.
3) Respondent has not taken any action in Ronald Arceneaux’s personal injury matter since 2001, and file materials were missing.' Respondent also apparently settled Mr. Arceneaux’s worker’s compensation matter but did not disburse his client’s portion of the proceeds, nor did he provide his client with status updates.
4) Freddie Dartez paid respondent $3,000 to handle a domestic matter. Thereafter, respondent abandoned his law practice but did not refund Mr. Dartez’s fee.
5) Cecile Wiltz hired respondent to handle her slip and fall claim. Respondent failed to communicate with Ms. Wiltz, neglected her case, then abandoned the representation without notice.
In6) Sharon Guillory paid respondent $400 to handle her divorce. Respondent neglected the matter, and Ms. Guillory had to pay another attorney to complete the divorce. .
7) Derrick Evans paid respondent $800, which he believed was a flat fee, to handle his .uncontested child support and custody matter. Following his interim suspension in 2002, respondent *530 sent Mr. Evans a bill for an additional $400.
8) Robert LeRoy hired respondent to handle a personal injury matter. Mr. LeRoy has been unable to contact respondent since July 2002. A $10,000 insurance check was issued to respondent on behalf of Mr. LeRoy; however, Mr. LeRoy did not receive his portion of the proceeds. Furthermore, DWRE was unable to locate Mr. LeRoy’s file.
9) Rachelle Holland hired respondent to handle a personal injury matter and a domestic matter. Respondent checked out the record of the personal injury case from the courthouse, and the record could not be located after respondent abandoned his law practice. The personal injury matter apparently settled for $30,000; however, Ms. Holland claimed she never received her portion of the proceeds.
10) Angel Miller paid respondent $500 to handle a child custody and support matter. Respondent apparently failed to communicate with her and made decisions about the case without informing her. After she left respondent a voicemail informing him she wanted to hire another attorney, he finally contacted her.
11) (A) Respondent represented William Guidry in a personal injury matter. The judge in the matter submitted a complaint to the ODC detailing respondent’s 118neglect of the matter and failure to obey court orders. The case was settled in June 1995 for $114,500. A year later, the settlement documents had not been signed. Therefore, the court ordered the plaintiff, Mr. Guidry, to pay the intervenor $57,659.61. In July 1998, the court ordered respondent to pay the inter-venor, which he failed to do. Respondent also failed to comply with the court’s order to produce records regarding his possession of the settlement funds. Counsel for intervenor filed a motion for contempt. Respondent did not appear at the hearing and a warrant was issued. However, respondent was given an opportunity to purge the contempt by appearing at a later date. Respondent again failed to appear, citing health problems. Counsel for intervenor introduced a copy of respondent’s trust account statement, indicating the funds were missing. Neither Mr. Guidry nor the intervenor received their portion of the settlement proceeds.
(B) Respondent also handled a second personal injury matter for Mr. Guidry. Counsel for the defendant mailed a check in the amount of $8,110 to respondent on behalf of Mr. Guidry. However, Mr. Guidry never received his portion of the proceeds.
Based on the above findings, the committee determined there is evidence that respondent converted client funds belonging to Ms. Landry, Mr. LeRoy, and Mr. Guidry. The total funds converted exceeded $100,000 and resulted in substantial harm to respondent’s clients and third parties. Citing Guideline 1 (“[rjepeated or multiple instances of intentional conversion of client funds with substantial harm”) of the permanent disbarment guidelines, the committee recommended that respondent be permanently disbarred.
11 Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation Findings in 01-DB-072

After review, the disciplinary board determined that most of the hearing committee’s factual findings were not manifestly *531 erroneous. However, the board modified two findings in the Landry matter to read as follows:
1) After paying Ms. Landry’s doctor in May 1998, the remaining funds of $9,263.21 should have been maintained in respondent’s trust account; and
2) On August 26, 1998, the trust balance was $31.57.
Despite these two errors, the board found that the committee properly applied the Rules of Professional Conduct. The board determined that respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and as a professional.
The board further found that respondent’s neglect caused the Hollands’ and Gearharts’ UM claim to prescribe. Fortunately for them, Ms. Holland’s father was able to settle the claim. In the Landry matter, respondent signed his client’s name to the settlement check without her knowledge and did not advise her of the settlement for two years. During this time, the balance in his trust account fell below the balance owed to Ms. Landry. Respondent did riot pay Ms. Landry her settlement funds for two years and still owes her medical providers approximately $1,241. Respondent also neglected Mr. Bronzoulis’ claim, at the very least causing a delay. Furthermore, respondent’s failure to cooperate with the ODC caused unjust delays in this proceeding and imposed an additional burden on the disciplinary system.
| ^Applying the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is disbarment. The board adopted the committee’s aggravating factors and added the aggravating factor of substantial experience in the practice of law (admitted 1980). The board also found that absence of a prior disciplinary record is present as a mitigating factor.

Findings in 0I-DB-082

The board determined that the committee’s factual findings are supported by the deemed admitted facts and/or the evidence submitted by the ODC. Based on these findings, the board determined that respondent violated Rules 1.3, 1.4, 1.15, 1.16(d), 8.3, 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct. Respondent abandoned his law practice and neglected or refused to properly attend to his clients’ needs. He was unavailable for. contact by his clients, opposing counsel, and the courts. Respondent also failed to return file materials to his clients after removing the files from DWRE and failed to refund unearned fees. He also settled Mr. Guidry’s lawsuits without his permission and deceived him about the status of his suits. Respondent received $114,500 and $8,110 in settlement funds on behalf of Mr. Guidry, endorsed Mr. Guidry’s name on the checks without his knowledge or consent, and deposited the funds into his trust accourit, thereafter converting the funds to his own use. He did not provide Mr. Guidry with an accounting and did not return the settlement releases to defense counsel. He also failed to disburse $57,659.61 to USF & G. Finally, when he abandoned his law practice, he failed to report his actions to the ODC and failed to cooperate with its investigations.
Based on these findings, the board determined that respondent intentionally violated duties owed to his clients, the public, the legal system, and as .a professional. LsHis actions caused substantial harm in that Mr. LeRoy, Rachelle Holland, and Mr. Guidry lost substantial sums of money and Ms. Landry’s medical providers have not been paid. Furthermore, numerous clients’ cases were abandoned, and the sta *532 tus of their claims are unknown. At least two cases prescribed.
Aggravating factors present are dishonest or selfish motive, a pattern of misconduct, multiple 'offenses, bad faith destruction of the disciplinary process by intentionally failihg to comply with rules or ordérs of the disciplinary agency, failure to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the' practice of law, and indifference to making-restitution. The only mitigating factor found by the board is- the absence of a prior disciplinary record.
The board found that conversion of client funds was charged and proven in the Landry and Guidry matters. The board also determined that, while there is evidence of conversion of Mr. LeRoy’s and Rachelle Holland’s funds, the ODC did not specifically charge respondent with conversion in those cases. Nonetheless, the board found that the Landry and Guidry matters involved three instances of conversion of client funds.
Citing,Guideline 1 of the permanent disbarment guidelines, the board determined that permanent disbarment is appropriate in this matter.[3]
Accordingly, the board recommended that respondent be permanently disbarred. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
|1fiDISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The testimony, evidence, and deemed admitted facts support the disciplinary board’s findings in the consolidated matters. Among other serious misconduct, respondent neglected legal matters, failed to communicate with , clients, abandoned his law practice, failed to cooperate with the ODC in numerous investigations, and converted client funds in excess of $120,000.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions.. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
*533 117The baseline sanction for this type of misconduct is clearly disbarment. Therefore, the only issue presented for our consideration is whether respondent’s misconduct is so egregious as to warrant permanent disbarment.
Supreme Court Rule XIX, Appendix E depicts conduct that may warrant permanent disbarment. We agree with the hearing committee and the disciplinary board that Guideline 1 (“[r]epeated or multiple instances of intentional conversion of client funds with substantial harm”) is applicable in this matter. Respondent intentionally converted funds belonging to Ms. Landry and Mr. Guidry. In Mr. Guidry’s case, the converted funds total $122,610. Restitution has not been made to either client.
The intentional conversion of client funds, coupled with respondent’s abandonment of his law practice without notice to his clients, indicates respondent lacks the requisite honesty and integrity to practice law. Accordingly, respondent must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of William J. Aubrey, Louisiana Bar Roll number 2597, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent's settlement disbursal, dated July 24, 1997, indicates the Hollands received $3,277.96, the Gearharts received $1,638.97, and respondent received $3,106.95 in costs and fees, for a total of $8,023.88. Respondent’s disbursal document does not indicate what happened to the remainder of the settlement. However, it appears that respondent charged his clients twice for $135 in mileage and long distance costs, indicating he may have converted the extra $135 of his clients' money to his own use.

. The Hollands and Gearharts discharged respondent on July 11, 2000. Mrs. Holland's father, Collier McCall, was given power of attorney to handle the UM claim for the Hollands and Gearharts. Mr. McCall was able to negotiate a settlement with USAA in December 2000, and the Hollands and the Gearharts received a total of $10,000 from USAA.

. Because conversion was not charged in the LeRoy and Holland matters, the board did not consider these in determining that permanent disbarment is appropriate.