982 So.2d 814 (2008)
In re Phillip L. ALLEMAN.
No. 2007-B-2060.
Supreme Court of Louisiana.
May 30, 2008.

*815 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Phillip L. Alleman, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS

Count I
Respondent failed to pay his Louisiana Bar dues and disciplinary assessment and failed to file his attorney registration statement for the 2005-2006 Bar fiscal year. Consequently, he has been ineligible to practice law since October 31, 2005.[1]
On October 22, 2005, respondent informed attorney S. Stephen Spring, II[2] that he was moving out of state and would no longer be practicing law. On October 29, 2005, respondent mailed his office keys to Mr. Spring's office address. He failed to notify his clients that he would no longer be practicing law and was unavailable to his clients, opposing counsel, and the courts.
The ODC alleged that respondent's conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.16(d) (obligations upon termination of the representation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

*816 Count II

Following respondent's abandonment of his law practice, nineteen clients filed complaints against him with the ODC.[3] Respondent failed to respond to the complaints and failed to cooperate with the ODC in its investigations.
The ODC alleged that respondent's conduct violated Rules 8.1(c) (failure to cooperate with the ODC in its investigation) and 8.4(d) of the Rules of Professional Conduct.

Count III
The following domestic relations clients paid respondent advanced fees and court costs: Earl Badon paid $900 on May 2, 2005; Tina Armand paid $500 on July 26, 2005; Nicole Guillory paid $350 on September 26, 2005; Sue McNeely paid $1,000 on September 29, 2005; Candy Sanders paid a total of $2,500 on October 2 and 4, 2005; and Willie Tate, Jr. paid $2,220 on October 16, 2005. Respondent failed to perform any significant work on behalf of these clients. He also misled them regarding the status of their cases or what work he would perform for them. Finally, he failed to refund unearned fees and unused court costs.
The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.15 (safekeeping property of clients or third parties), 1.16(d), 8.4(a), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness), and 8.4(c) of the Rules of Professional Conduct.

Count IV
The following bankruptcy clients paid respondent advanced fees and court costs: Gary and Ashley Babin paid $704 in April 2005; Donna Clark paid $754 on April 22, 2005; Laura Daniel paid $784 between June 24 and July 8, 2005; Warren and Ruth Schulingkamp paid $1,244 on July 27, 2005; Jeff Ventura paid $734 on September 9, 2005; and Michael Smith, Jr. paid $734 on October 10, 2005. Respondent failed to perform any significant work on behalf of these clients, failing to properly file and pursue their bankruptcy cases. He also misled them regarding the status of their cases or what work he would perform for them. Finally, he failed to refund unearned fees and unused court costs.
The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.15, 1.16(d), 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

Count V
The following clients also paid respondent advanced fees and court costs: Wayne and Wanda Courville paid $1,500 in January/February 2005 for a damages case; Charity Avery paid $2,700 in January/February 2005 for Anthony Talbot's representation; Zenita Taullie paid $1,000 on July 21, 2005 for Jack Cooper's representation in an eviction case; Zenita Taullie paid $300 on September 12, 2005 for preparation of Jack Cooper's last will and testament; and Shawn Ingle paid $220 in court costs on September 12, 2005 for a property appraisal dispute case. Respondent failed to perform any significant work on behalf of these clients, failing to diligently and promptly pursue their legal matters. He also misled them regarding the status of their cases or what work he would perform for them. Finally, he failed to refund unearned fees and unused court costs.
*817 The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.15, 1.16(d), 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

Count VI
Tammy Wroten paid respondent $600 in advanced fees in a domestic relations case. Respondent filed a motion to enroll in Ms. Wroten's case, which motion was granted on December 8, 2004. On January 12, 2005, respondent filed a motion and application to proceed in forma pauperis in Ms. Wroten's case. The motion and application contained false information, and Ms. Wroten neither assisted in the preparation nor signed the documents. Furthermore, respondent notarized Ms. Wroten's forged signature on the documents. Respondent failed to perform any significant work in Ms. Wroten's case and misled her regarding the status. He also failed to refund the unearned fees.
The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.16(d), 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

Count VII
In 2004, Steven Denmark retained respondent to collect a judgment on his behalf in a case captioned Denmark v. Washington, No. 0207-5512 in Baton Rouge City Court. Respondent obtained a garnishment order against the defendant in October 2004. By January 31, 2005, respondent had collected $1,349.75 pursuant to the garnishment. However, he failed to notify Mr. Denmark of the funds, failed to account for the funds, and failed to forward any of the funds to Mr. Denmark. He also failed to return Mr. Denmark's telephone calls.
The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.15, 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

DISCIPLINARY PROCEEDINGS
Respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee's consideration.

Hearing Committee Recommendation
After considering the ODC's deemed admitted submission, the hearing committee determined that the factual allegations were deemed admitted and proven by clear and convincing evidence. Specifically, the committee found that respondent has been ineligible to practice law since October 31, 2005 and on October 22, 2005 he abandoned his law practice and clients. Furthermore, respondent informed Mr. Spring that he was moving out of state and would no longer be practicing law. While in Denver, Colorado, on October 29, 2005, respondent mailed his office keys to Mr. Spring. The committee also found that respondent disappeared and was unavailable to his clients, opposing counsel, or the courts. He failed or refused to properly attend to the needs of his clients and their cases, properly communicate with his clients, act with diligence and promptness on their behalf, provide accountings to his clients, and refund unearned fees and unused costs.
Based on these findings, the committee determined that respondent violated Rules 1.3, 1.4, 1.15, 1.16(d), 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(d). The committee further found that these numerous rule violations indicate that respondent "essentially abandoned his legal practice."
*818 Turning to the issue of an appropriate sanction, the committee found that respondent's actions had the potential to cause serious injury to his clients and the legal profession. The committee determined that the baseline sanction for respondent's misconduct is disbarment. In aggravation, the committee found a dishonest or selfish motive, a pattern of misconduct, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, and indifference to making restitution. In mitigation, the committee found an absence of a prior disciplinary record and inexperience in the practice of law (admitted 2004). Furthermore, in mitigation, the committee considered respondent's contact with Mr. Spring, who was able to be appointed Curator Ad Hoc to assist respondent's clients.
The committee determined that Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines as listed in Supreme Court Rule XIX, Appendix E applies in this matter. However, based on the mitigating factors, the committee determined that ordinary disbarment would be adequate.
Accordingly, the committee recommended that respondent be disbarred. The committee further recommended that respondent refund all unearned fees and be assessed with all costs of these proceedings.
In its brief to the disciplinary board, the ODC disagreed with the hearing committee's recommended sanction and suggested permanent disbarment is appropriate. Respondent did not file an objection to the committee's recommendation.

Disciplinary Board Recommendation
After reviewing this matter, the disciplinary board determined that the deemed admitted facts are not manifestly erroneous and adopted same.[4] The board found that respondent violated the Rules of Professional Conduct as alleged by the ODC in all Counts except in regard to Mr. Talbot and Ms. Avery in Count V. The board determined that, since neither Mr. Talbot nor Ms. Avery filed a "valid" complaint with the ODC, there was insufficient evidence to support a violation of Rules 1.15 and 8.4(b) with respect to either of them.[5]
Based on these findings, the board determined that respondent knowingly and/or intentionally violated duties owed to his clients and as a professional. Nineteen complaints repeatedly describe how respondent accepted money from clients but did nothing in return. Besides his clients losing their money, many of the matters were divorce and bankruptcy *819 cases, which left his clients lingering with no resolution. Furthermore, respondent's acceptance of new clients within thirty days of closing his office strongly suggests he knew he would not be performing the services for which he was paid. The board further determined that the baseline sanction for respondent's misconduct is disbarment.
As aggravating factors, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, vulnerability of the victims, and indifference to making restitution. As mitigating factors, the board found absence of a prior disciplinary record and inexperience in the practice of law.
After also considering Guideline 1 of the permanent disbarment guidelines along with the cases of In re: Favors, 06-1339 (La.9/29/06), 938 So.2d 677 (permanent disbarment imposed upon an attorney with no prior discipline and inexperience in the practice of law who failed to provide competent representation to clients, neglected clients' legal matters, failed to communicate with clients, failed to refund unearned fees, converted over $40,000 of client and third-party funds to his own use, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, relocated out of state without notifying clients, and failed to cooperate with the ODC) and In re: Aubrey, 06-0004 (La.4/28/06), 928 So.2d 524 (permanent disbarment imposed upon an attorney who neglected legal matters, failed to communicate with clients, abandoned his law practice, failed to cooperate with the ODC in numerous investigations, and converted client funds in excess of $120,000), the board recommended that respondent be permanently disbarred. The board also recommended that respondent make restitution to his clients.[6] Finally, the board recommended that respondent be assessed with all costs of these proceedings and reimburse the Client Assistance Fund as appropriate.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992).
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily *820 apparent from the deemed-admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The deemed admitted facts in this matter indicate respondent neglected numerous legal matters, abandoned his law practice, and failed to refund unearned fees and unused costs, converting those funds to his own use. These facts support a finding that respondent has violated the Rules of Professional Conduct as alleged in all Counts.[7]
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The baseline sanction for this type of misconduct is clearly disbarment. Therefore, the only issue presented for the court's consideration is whether respondent's misconduct is so egregious as to warrant permanent disbarment.
Supreme Court Rule XIX, Appendix E depicts conduct that may warrant permanent disbarment. We agree with the disciplinary board that Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) is applicable in this matter. Respondent repeatedly accepted fees from numerous clients then intentionally converted those funds to his own use when he did no work in the matters, abandoned his law practice, and failed to refund said funds.
The intentional conversion of client funds, coupled with respondent's abandonment of his clients and his law practice, indicates that respondent lacks the requisite honesty and integrity to practice law. Furthermore, the mitigating factors present in this case  the absence of a prior disciplinary record and inexperience in the practice of law  are significantly outweighed by the numerous aggravating factors.
Prior jurisprudence reveals that similar cases have resulted in permanent disbarment.[8] Accordingly, respondent must be permanently disbarred. We further order respondent to make restitution to his victims.[9]

*821 DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Phillip L. Alleman, Louisiana Bar Roll number 28864, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent make restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Respondent has also been ineligible to practice law since September 29, 2007 due to his failure to complete his mandatory continuing legal education requirements.
[2] Mr. Spring is an attorney in Gonzales, Louisiana. On November 8, 2005, he was appointed Curator Ad Hoc to provide aid and assistance to respondent's former clients.
[3] The complainants were Darius Vohsberg, Ellen Brown, Tammy Wroten, Steven Denmark, Wayne Courville, Gary and Ashley Babin, Donna Clark, Earl Badon, Laura Daniel, Jack Cooper, Tina Armand, Warren and Ruth Schulingkamp, Jeff Ventura, Shawn Ingle, Nicole Guillory, Sue McNeely, Candy Sanders, Michael Smith, Jr., and Willie Tate, Jr.
[4] The board made factual findings in all Counts consistent with the facts summarized in the underlying facts section above. However, in Count I, the board made additional findings based on the ODC's deemed admitted submission. The board found that the complainants all told a similar story wherein they hired respondent, he did no work, but he led them to believe he was doing work on their behalf. Furthermore, most complainants discovered respondent's office was closed in October 2005 when respondent's telephone message indicated that current clients should not call him anymore because another attorney would call them to handle their cases but new clients should leave their names and telephone numbers for him. Eventually, all of respondent's telephone numbers were disconnected, and he did not return his clients' calls.
[5] In a brief to this court, the ODC disagreed with the board's finding with respect to Mr. Talbot and Ms. Avery. The ODC claims this finding conflicts with Supreme Court Rule XIX and has the potential to limit its ability to investigate and prosecute attorney misconduct.
[6] Specifically, restitution should be made in the following amounts: $900 to Earl Badon, $500 to Tina Armand, $350 to Nicole Guillory, $1,000 to Sue McNeely, $2,500 to Candy Sanders, $2,200 to Willie Tate, Jr., $754 to Gary and Ashley Babin, $754 to Donna Clark, $784 to Laura Daniel, $1,244 to Warren and Ruth Schulingkamp, $734 to Jeff Ventura, $734 to Michael Smith, Jr., $1,500 to Wayne and Wanda Courville, $1,300 to Jack Cooper, $220 to Shawn Ingle, $1,349.75 to Steven Denmark, $600 to Tammy Wroten, and $550 to Ellen Brown.
[7] The disciplinary board neglected to find that respondent had violated Rules 1.15 and 8.4(b) with respect to Ms. Avery and Mr. Talbot in Count V simply because Ms. Avery and Mr. Talbot did not file complaints with the ODC. The ODC disagreed with this finding in its brief to this court. Based on Supreme Court Rule XIX, Sections 4(B)(1)(2) and (3), which state that the ODC has the power and duty to screen, investigate, and prosecute all matters brought to its attention, and Section 18(H), which states "neither unwillingness nor neglect of the complainant to sign a complaint or prosecute a charge or settlement or compromise between the complainant and the lawyer or restitution by the lawyer, shall, in itself, justify abatement of the processing of any complaint," there is no requirement that the victim has to be a complainant in order to prove a respondent has violated the Rules of Professional Conduct.
[8] See In re: Favors, 06-1339 (La.9/29/06), 938 So.2d 677 and In re: Aubrey, 06-0004 (La.4/28/06), 928 So.2d 524.
[9] Restitution should be made as indicated in the disciplinary board's report and recommendation. Additionally, restitution should be made to Charity Avery in the amount of $2,700.