*163
 
 | ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM
 
 *
 

 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Richard Bates, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public.
 
 In re: Bates,
 
 08-0296 (La.2/13/08), 974 So.2d 664.
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 The ODC filed two sets of formal charges against respondent, consisting of a total of thirty counts of misconduct. Respondent failed to answer either set of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearings were held, but the parties were given an opportunity to file with the hearing committees "written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration in either matter.
 

 The formal charges were considered by separate hearing committees before being consolidated by order of the disciplinary board. The board subsequently filed in this court a single recommendation of discipline encompassing both sets of formal charges.
 

 [iM-DB-010
 

 Count I
 
 — The
 
 Johnson Matter
 

 In June 2006, Mira Johnson hired respondent to handle her personal injury claim. Initially, respondent worked on Ms. Johnson’s case and communicated with her. However, beginning in August 2006, Ms. Johnson was unable to contact respondent, despite numerous attempts.
 

 In October 2006, Ms. Johnson filed a disciplinary complaint against respondent. In December 2006, respondent indicated he would promptly provide Ms. Johnson with a copy of her file. However, he failed to do so.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), and 1.16(d) (obligations upon termination of the representation).
 

 
 *164
 

 Counts II & III
 
 — The
 
 Unauthorized Practice of Law Matters
 

 From February 4, 2005
 
 to
 
 August 17, 2005, respondent was declared ineligible to practice law for failure to comply with the mandatory continuing legal education requirements.
 
 [1]
 
 Likewise, from October 31, 2005 to February 9, 2006, and again from September 11, 2006 to December 11, 2006, respondent was ineligible to practice for failure to pay his bar dues and the disciplinary assessment.
 

 Notwithstanding his ineligibility to practice law, respondent filed motions on behalf of his criminal client, Keshondria Amos, on February 15, 2005, and appeared in court with Ms. Amos for a hearing on the motions on March 11, 2005. Respondent also appeared in court with Ms. Amos for trial on April 11, 2005 and June 16, 2005.
 

 | ¡¡Furthermore, respondent appeared in court on September 26, 2006 to represent his criminal client, Cassie Lee, at her arraignment. He also appeared in court with Ms. Lee for trial on October 18, 2006 and November 28, 2006.
 

 Additionally, respondent filed the following pleadings on behalf of various clients: a petition for damages on February 2, 2006; a petition for damages on November 2, 2006; a petition for damages on November 6, 2006; and an objection to a proposed relocation of a minor child with a rule to show cause on November 22, 2006.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(b) (failure to comply with MCLE requirements), 5.5(a) (engaging in the unauthorized practice of law), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
 

 Count IV
 
 — The
 
 Weathersby Matter
 

 In August 2006, Hope Weathersby hired respondent to represent her in a criminal matter, and Ms. Weathersby’s family paid respondent $1,500. Respondent met with Ms. Weathersby on August 11, 2006. Respondent did not speak to Ms. Weathersby again until September 18, 2006, when he appeared in court with her. At that time, respondent was ineligible to practice law for failing to pay his bar dues and the disciplinary assessment.
 

 On October 13, 2006, respondent again appeared in court on Ms. Weathersby’s behalf. The judge advised respondent he was ineligible to practice law. Respondent insisted to the judge that he had paid his bar dues and the disciplinary assessment, but the judge would not allow him to represent Ms. Weathersby. Despite the judge’s action, respondent advised Ms. Weathersby’s family that the judge had made a Lmistake, and he requested additional funds to continue the representation. A week later, respondent withdrew from the representation. He failed to refund any portion of the $1,500 fee.
 

 Respondent did not pay his bar dues and the disciplinary assessment until December 12, 2006, at which time he was returned to eligible status. He deliberately attempted to mislead the judge into believing these fees were paid prior to October 13, 2006.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(6) (failure to refund an unearned fee),
 
 [2]
 
 1.16(d), 3.2 (failure to make reason
 
 *165
 
 able efforts to expedite litigation), 3.3(a)(1) (knowingly making a false statement of fact or law to a tribunal), 5.5(a), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d).
 

 Count V
 
 — The
 
 Lafayette Matter
 

 In February 2007, Tanya Lafayette paid respondent $600 of his $1,200 fee to handle her bankruptcy. Thereafter, with the exception of leaving one voice mail message, respondent failed to communicate with Ms. Lafayette. On March 16, 2007, Ms. Lafayette mailed a letter to respondent terminating his services.
 

 Also in March 2007, Ms. Lafayette filed a disciplinary complaint against respondent. In a May 31, 2007 sworn statement to the ODC, respondent acknowledged that he failed to complete Ms. Lafayette’s bankruptcy.
 

 | sThe ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.5(f)(6), and 1.16(d).
 

 Count VI
 
 — The
 
 White Matter
 

 On January 17, 2006, Leslie White paid respondent $2,000 to assist her in getting her son released from jail. Respondent agreed to return all but $300 if he was unsuccessful in having Ms. White’s son released. Respondent was ultimately unsuccessful. Accordingly, respondent spoke to Ms. White and promised to refund $1,700. Ms. White never received the money. Respondent also failed to further communicate with Ms. White.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.5(f)(6), 1.16(d), and 8.4(c).
 

 Counts VII & VIII
 
 — The
 
 Van Wormer Matters
 

 From June 23, 2006 to July 17, 2006, Dr. George Van Wormer treated respondent’s clients, Shabriell McKay and her two minor children, for injuries they sustained in an automobile accident. Dr. Van Worm-er’s total charges for Ms. McKay and her children were $1,994. By letter dated June 26, 2006, Dr. Van Wormer notified respondent of his health care provider lien. On December 28, 2006, respondent settled the three claims, and the insurance company issued the checks payable to the clients, respondent, and Dr. Van Wormer. Despite the fact that Dr. Van Wormer did not endorse the checks, they all bear his purported endorsement. On March 20, 2007, Dr. Van Wormer contacted the insurance company and learned of the settlements. The next day, he sent respondent a certified letter, demanding payment. However, the letter was returned, marked “not deliverable as addressed” | fiand “unable to forward.” To date, Dr. Van Wormer has not received payment from respondent.
 

 From April 24, 2006 to June 26, 2006, Dr. Van Wormer treated respondent’s client, Jahvan Frazier. Dr. Van Wormer’s total charges were $1,850. By letter dated May 4, 2006, Dr. Van Wormer notified respondent of his health care provider lien. On September 8, 2006, respondent settled Mr. Frazier’s claim, and the insurance company issued a check payable to Mr. Frazier and respondent. On October 12, 2006, Mr. Frazier informed Dr. Van Wormer of the settlement. On January 19, 2007, Dr. Van Wormer sent respondent a letter, demanding payment. To date, Dr. Van Wormer has not received payment from respondent.
 

 The ODC alleged respondent’s conduct violated the following provisions of the
 
 *166
 
 Rules of Professional Conduct: Rules 1.3, 1.15(d) (failure to timely remit funds to a client or third person), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c).
 

 Count IX
 
 — The
 
 Louisiana Board of Pharmacy Matter
 

 Respondent represented Southern Discount Drugs, through owner Candace Wilson, in a disciplinary action pending before the Louisiana Board of Pharmacy. Southern Discount Drugs entered into a consent agreement, wherein it agreed to pay the Board $5,750 in fines and costs. On March 7, 2007, respondent issued a trust account check to the Board for his client’s payment. However, the check was returned due to insufficient funds in the account.
 
 [3]
 

 During respondent’s May 31, 2007 sworn statement to the ODC, he stated the overdraft was caused by his client’s failure to deposit the funds into his trust account 17following the Board proceedings, as she had promised. However, Ms. Wilson paid respondent $5,750 in cash prior to respondent’s issuance of the check.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), 8.4(b), and 8.4(c).
 

 Count X
 
 — The
 
 Failure to Cooperate Matter
 

 On February 13, 2007, respondent gave a sworn statement to the ODC. During the sworn statement, respondent failed to provide copies of client flies which the ODC had requested. Respondent also failed to provide the ODC with copies of the files in response to an April 4, 2007 subpoena duces tecum.
 

 On April 28, 2007, the ODC’s investigator served respondent with a subpoena to give his sworn statement on May 31, 2007 and provide copies of other relevant client flies. The investigator also provided respondent with copies of subsequent complaints filed against him. Respondent appeared for the May 2007 sworn statement but failed to produce the client files. Respondent also agreed to provide the ODC with copies of his trust account records, but he failed to produce said records.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.1(c) (failure to cooperate with the ODC in its investigation) and 8.4(c).
 

 Count XI
 
 — The
 
 Bar Registration Matter
 

 Respondent moved from his law office in Metairie in April 2007 but did not update his primary registration address with the Louisiana State Bar Association | s(“LSBA”) until September 2007. He has been advised on more than one occasion that he is required to provide the LSBA with up-to-date contact information.
 

 The ODC alleged respondent’s conduct violated Rule 1.1(c) (failure to timely notify the LSBA of changes of address) of the Rules of Professional Conduct.
 

 Count XII
 
 — The
 
 Breaux Matter
 

 Some time in late 2005, Richard Breaux hired respondent to handle litigation against Mr. Breaux’s former tenant, Joshua Desselles. Mr. Breaux paid respondent a $1,000 advance deposit and gave respondent documents related to the matter. Nonetheless, respondent failed to file a lawsuit on Mr. Breaux’s behalf.
 

 
 *167
 
 On February 9, 2006, the Jefferson Parish District Attorney’s Office charged Mr. Breaux with aggravated assault, based on allegations made by Mr. Desselles. On May 16, 2006, Mr. Breaux paid respondent $500 to represent him in connection with the criminal charge. That same day, respondent appeared in court with Mr. Breaux and obtained a continuance. On July 11, 2006, respondent again appeared in court on Mr. Breaux’s behalf, but the trial was again continued until August 29, 2006. Respondent assured Mr. Breaux he would try to get the criminal charges dropped before August 29; thus, Mr. Breaux would not need to appear in court on that date. However, respondent failed to resolve the matter and did not appear for the trial. Accordingly, the court issued an instanter attachment for Mr. Breaux.
 

 After receiving notice of the attachment, Mr. Breaux attempted to contact respondent numerous times but was unsuccessful. Instead, on September 5, 2006, he paid a $50 fine to have the attachment recalled.
 

 On October 19, 2006, Mr. Breaux hired another attorney to handle the criminal matter because he still could not contact respondent. The matter was resolved on |January 16, 2007, with Mr. Breaux pleading guilty to disturbing the peace, paying a $75 fine, and being placed on probation until May 7, 2007.
 

 Approximately a week later, Mr. Des-selles filed a lawsuit against Mr. Breaux. Mr. Breaux attempted to contact respondent to obtain the documents associated with his dispute with Mr. Desselles. Respondent did not return Mr. Breaux’s calls or return the documents. Mr. Desselles was ultimately awarded $1,300, and Mr. Breaux hired a third attorney to handle the appeal. Mr. Breaux continued to try to obtain his documents from respondent but was unsuccessful.
 

 In June 2007, Mr. Breaux filed a disciplinary complaint against respondent. Shortly after respondent received notice of the complaint, respondent’s business associate, Mark Jeff, contacted Mr. Breaux to return the documents. However, before he returned the documents, Mr. Jeff made Mr. Breaux sign a letter drafted by respondent, in which Mr. Breaux withdrew his disciplinary complaint. Mr. Jeff also returned the $1,500 Mr. Breaux had paid respondent. Mr. Jeff then mailed the letter to the LSBA in an envelope with Mr. Breaux’s return address.
 

 Mr. Breaux gave the ODC a sworn statement, wherein he testified that he only signed the letter because he believed he would not get the documents if he did not do so. He also testified that he wished to pursue the complaint against respondent. Mr. Jeff also provided the ODC with a sworn statement, wherein he testified that respondent instructed him not to return Mr. Breaux’s money or documents unless Mr. Breaux signed the letter.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f) (failure to account for or refund an unearned fee), 1.16(d), 3.2, 3.4(b) (a lawyer shall not falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that | ]nis prohibited by law), 3.4(f) (a lawyer shall not request a person other than a client to refrain from voluntarily giving relevant information to another party), 8.4(c), and 8.4(d).
 

 Count XIII
 
 — The
 
 Kruse Matter
 

 In October 2004, Dr. Mark Kruse began treating Julius Landry, respondent’s personal injury client. Dr. Kruse received a letter from respondent guaranteeing payment of Mr. Landry’s medical expenses. Dr. Kruse also provided respondent with notification of his health care provider lien.
 

 
 *168
 
 Mr. Landry’s medical treatment ended on April 20, 2005, and Dr. Kruse’s final bill was $1,165. Thereafter, Dr. Kruse made numerous attempts to obtain information from respondent about the status of Mr. Landry’s personal injury claim. In August 2006, Mr. Landry informed Dr. Kruse that his case had settled some time in 2005. Dr. Kruse eventually reached respondent on his cell phone, and respondent agreed to submit payment to Dr. Kruse. However, respondent still owes Dr. Kruse $550.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.15(d), 8.4(b), and 8.4(c).
 

 Hearing Committee Report
 

 As previously indicated, respondent failed to answer the formal charges in 08-DB-010. Accordingly, the factual allegations were deemed admitted. After considering the ODC’s deemed admitted submission, the hearing committee determined, based on the deemed admitted facts and the additional evidence presented by the ODC, that respondent has violated the following provisions of the Rules of Professional Conduct: 1.1(b), 1.1(c), 1.3, 1.4, 1.5(f), 1.5(f)(6), 1.15(d)i_Jbjl.l6(d), 3.2, 3.3(a)(1), 3.4(b), 3.4(f), 5.5(a), 8.1(a), 8.1(c), 8.4(b), 8.4(c), and 8.4(d). The committee found the deemed admitted facts and supporting documentation establish by clear and convincing evidence a pattern of respondent: a) accepting fees and not doing the agreed-upon work; b) failing to return unearned fees and/or client files; c) failing to communicate with clients; d) engaging in the unauthorized practice of law; and e) making misrepresentations to the judiciary and the ODC.
 

 The committee further determined respondent’s actions violated duties owed to his clients, the legal system, and the legal profession. At a minimum, he acted negligently, and his violations caused serious harm to his clients. Respondent’s actions resulted in the delay of legal proceedings and additional expenses to his clients. Furthermore, the record reflects respondent has abandoned his law practice with clients not receiving their files or the unearned portion of fees paid. Citing the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined the baseline sanction is disbarment.
 

 In aggravation, the committee found pri- or disciplinary offenses (2006 admonition for practicing law while ineligible due to failure to comply with MCLE requirements), a dishonest or selfish motive, a pattern of misconduct, and multiple offenses. The committee did not address the presence of mitigating factors.
 

 Under these circumstances, the committee recommended respondent be disbarred.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s report in 08-DB-010.
 

 11208-DB-088
 

 Count I
 
 — The
 
 Gabriel Matter
 

 From February 4, 2005 until August 17, 2005, respondent was ineligible to practice law for failing to comply with MCLE requirements. From October 31, 2005 until February 9, 2006, respondent was ineligible to practice law for failing to pay bar dues and the disciplinary assessment. Nonetheless, on July 18, 2005, respondent agreed to represent Al’Demon Gabriel in a criminal matter for a $10,000 fee. Over the next eighteen months, Terry Lynn Gabriel, Al’Demon’s mother, paid respondent a total of $5,775.
 

 Between July 27, 2005 and March 26, 2007, respondent filed various motions and pleadings and appeared in court on numerous occasions on Al’Demon’s behalf. How
 
 *169
 
 ever, on March 26, 2007, respondent withdrew from the representation because Ms. Gabriel had failed to pay the entire $10,000 fee. After withdrawing, respondent failed to provide Ms. Gabriel or Al’Demon with an accounting and/or refund of any unearned portion of the fee. Furthermore, during the representation, respondent failed to keep Al’Demon reasonably informed about the status of his case. From August 24, 2005 to August 3, 2006, respondent failed to communicate with Al’Demon at all.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(b), 1.1(c) (failure to pay bar dues and the disciplinary assessment), 1.4, 1.5(f)(5) (failure to refund an unearned fee), 1.16(d), 3.2, and 5.5(a).
 

 Count II
 
 — The
 
 Poplus Matter
 

 On October 21, 2007, George Poplus hired respondent to represent him in a criminal matter, paying respondent $500 of the $1,000 fee, with the balance due after 1iaMr. Poplus’ trial. Thereafter, respondent failed to meet with Mr. Poplus as promised. Respondent also failed to communicate with Mr. Poplus, despite Mr. Po-plus’ numerous attempts to contact him. On November 12, 2007, Mr. Poplus appeared in court for his trial. Respondent failed to appear, despite receiving notice of the trial date.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16(d), 3.2, 8.4(c), and 8.4(d).
 

 Count III
 
 — The
 
 Filer Matter
 

 In late September 2007, Cornell Filer hired respondent to represent him in a criminal matter. In October and November 2007, Mr. Filer paid respondent a total of $1,500 towards his $10,000 fee.
 

 Respondent assured Mr. Filer he would file a motion to reduce bond and later advised Mr. Filer he had filed the motion when, in fact, he had not done so. Respondent also falsely informed Mr. Filer he had appeared in court at a hearing on the motion, and the motion was denied.
 

 On October 19, 2007, respondent filed a motion for preliminary examination, which was set for November 15, 2007. Respondent failed to appear in court for the preliminary examination.
 

 Thereafter, Mr. Filer was unsuccessful in contacting respondent, as respondent’s office telephone number had been disconnected and his cell phone number was being directed to voice mail. Respondent failed to respond to Mr. Filer’s voice mail messages.
 

 114The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16(d), 3.2, 8.4(c), and 8.4(d).
 

 Count IV
 
 — The
 
 Ball Matter
 

 Some time after May 3, 2007, Jasper Ball hired respondent to represent him in a criminal matter. Mr. Ball paid respondent $1,000 towards his $1,500 fee.
 

 On August 2, 2007 and August 15, 2007, respondent appeared in court on Mr. Ball’s behalf and requested continuances. Respondent failed to appear in court on the next two scheduled court dates. Mr. Ball also did not appear. Consequently, the criminal commissioner ordered an attachment be issued for Mr. Ball and ordered his $500 bail be forfeited. The commissioner delayed implementation of her order until October 12, 2007. On that date, respondent appeared at the courthouse and accepted notice of a new hearing date, and the attachment/forfeiture order was not issued. However, respondent also
 
 *170
 
 failed to appear at the next two scheduled court dates.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.5(f)(5), 1.16(d), 3.2, 8.4(c), and 8.4(d).
 

 Count V
 
 — The
 
 Brown Matter
 

 In May 2007, Eugene Brown hired respondent to handle his divorce and child custody matter. Mr. Brown paid respondent $750 in three payments.
 

 On May 31, 2007, respondent filed a petition for divorce on Mr. Brown’s behalf. Mr. Brown signed an affidavit of verification that was filed with the petition. However, respondent’s secretary signed respondent’s name as notary on the affidavit.
 

 | , ¡¡After their initial meeting, respondent would not return Mr. Brown’s phone calls. Respondent appeared with Mr. Brown at a hearing officer’s conference on October 5, 2007. Thereafter, Mr. Brown was only able to contact respondent once, despite numerous attempts.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.5(f)(5), 1.16(d), 3.2, 5.3(b) (failure to properly superase a non-lawyer assistant), 8.4(c), and 8.4(d).
 

 Counts VI & VIII
 
 — The
 
 Gerac/Garris Matters
 

 On April 2, 2007, Peggy Gerac hired respondent to represent her grandson, Christopher Garris, on charges of failure to appear at a scheduled court date. She paid respondent $1,000.
 

 Respondent met privately with Mr. Gar-ris on that date. At the time, Mr. Garris had outstanding attachments for his arrest for failing to appear. According to Mr. Garris, respondent spoke with the judge and handled the matter. Respondent also advised Mr. Garris he would not have to make any additional court appearances to conclude the matter. A week or two later, Ms. Gerac spoke with respondent, who told her the same thing he had told Mr. Garris.
 

 In June 2007, Ms. Gerac paid respondent a $750 fee and $250 in court costs to assist her in quieting title to property she had acquired at a sheriffs sale. In July 2007, respondent filed a petition to quiet tax title on Ms. Gerae’s behalf. Thereafter, respondent closed his law office without notifying Ms. Gerac and failed to take further action on the matter.
 

 On December 31, 2007, Mr. Garris was taken into custody on the failure to appear attachments issued prior to his consultation with respondent. The court | ¡(¡records of the cases pending against Mr. Garris indicate respondent did not file a motion to enroll as counsel or any other pleadings on Mr. Garris’ behalf.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.5(f)(5), 1.16(d), 3.2, 8.4(c), and 8.4(d).
 

 Count VII
 
 — The
 
 Wendell Gerac Matter
 

 In 2007, Wendell Gerac paid respondent $400 towards an $800 fee to have respondent assist him in changing his son’s last name. After paying the $400, Mr. Gerac had trouble communicating with respondent and his office staff. Two weeks after making the payment, respondent’s non-lawyer assistant contacted Mr. Gerac and threatened to sue him if he did not pay the remaining $400. Thereafter, Mr. Gerac made three visits to respondent’s office, but his office was closed each time. Since then, Mr. Gerac has had no further communication with respondent or anyone from his office.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.5(f)(5), and 1.16(d).
 

 
 *171
 

 Count IX
 
 — The
 
 Lewis Matter
 

 In March 2007, Michael Lewis hired respondent to represent him in a criminal matter. At their initial meeting, Mr. Lewis, with his father’s help, paid respondent $2,500 towards the $7,500 fee. On April B, 2007, respondent appeared with Mr. Lewis for his arraignment. A trial date was set for June 25, 2007. On April 23, 2007, Mr. Lewis, again with his father’s help, paid respondent the remainder of the fee. On 117May 8, 2007, respondent filed several motions on Mr. Lewis’ behalf, which motions were ultimately set for hearing on December 17, 2007.
 

 Some time in May 2007, Mr. Lewis began to have trouble communicating with respondent. Thereafter, Mr. Lewis’ father encountered respondent at the courthouse and requested a refund of the fee paid. Respondent failed to provide the refund or an accounting.
 

 Respondent also failed to inform Mr. Lewis of the court dates. As a result, Mr. Lewis failed to appear at the December 17, 2007 hearing, and a bench warrant was issued for his arrest. Mr. Lewis had to hire another attorney to have the warrant recalled.
 

 Mr. Lewis’ attempts to contact respondent since May 2007 have been unsuccessful. Some time in late 2007, respondent abandoned his law office without notifying his clients, including Mr. Lewis.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.8, 1.4,1.16(d), 3.2, and 8.4(d).
 

 Count X
 
 — The
 
 Pittman Matter
 

 In September 2007, David Pittman hired respondent to represent him in a criminal matter for a $2,000 fee. Respondent filed two motions on Mr. Pittman’s behalf, one being a motion to reduce Mr. Pittman’s bond. Following the bond reduction hearing on November 5, 2007, Mr. Pittman was unable to contact respondent.
 

 Other than one conversation in September 2007, Mr. Pittman has not met with or spoken to respondent because his attempts to contact respondent have been | ^unsuccessful. Some time in late 2007, respondent abandoned his law office without notifying his clients, including Mr. Pittman.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.16(d), 3.2, and 8.4(d).
 

 Count XI
 
 — The
 
 Dauterive Matter
 

 In April 2007, Joey Dauterive hired respondent to represent him in a criminal matter. Mr. Dauterive paid respondent a $10,000 fee, plus $1,500 to cover the expense of independent fingerprint testing.
 

 Respondent filed numerous motions and appeared in court on Mr. Dauterive’s behalf. However, beginning in November 2007, Mr. Dauterive was unable to contact respondent, despite repeated attempts. Some time in late 2007, respondent abandoned his law office without notifying his clients, including Mr. Dauterive. Thereafter, respondent failed to appear in court or take any other action on Mr. Dauterive’s behalf.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.16(d), 3.2, and 8.4(d).
 

 Count XII
 
 — The
 
 Alexander Matter
 

 In September 2007, respondent appeared in court to represent Andrew Alexander in a criminal matter. In December 2007, respondent missed two court dates on Mr. Alexander’s behalf. On both occasions, Mr. Alexander notified the court that he had been unable to contact respondent. Some time in late 2007, respondent
 
 *172
 
 abandoned his law office without notifying his clients, including Mr. Alexander. Mr. Alexander had to retain another attorney to assist him.
 

 11sThe ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.16(d), 3.2, and 8.4(d).
 

 Count XIII
 
 — The
 
 James Matter
 

 Some time after April 20, 2007, Ali James hired respondent to represent him in a criminal matter. Mr. James paid respondent $6,300 towards his $10,000 fee.
 

 Respondent filed numerous motions and appeared in court on Mr. James’ behalf. However, respondent failed to appear at a scheduled hearing in December 2007. Some time in late 2007, respondent abandoned his law office without notifying his clients, including Mr. James.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.16(d), 3.2, and 8.4(d).
 

 Counts XIV & XVI
 
 — The
 
 Nerve Matter
 

 In September 2007, Sandral Nerve hired respondent to represent her sons, Charles Nerve and Jeric Nerve, in criminal matters for a combined fee of $11,000. Initially, Ms. Nerve paid respondent $4,000.
 

 Respondent filed numerous motions and appeared in court on Charles’ behalf. However, in November 2007, the Nerves began to have trouble contacting respondent. Just before Thanksgiving 2007, Ms. Nerve attempted to contact respondent to make an additional $1,000 payment, but respondent failed to respond to her messages. On December 17, 2007, respondent failed to appear in court for Charles’ trial, and the court appointed the Indigent Defender Board to represent him.
 

 Respondent filed one motion on behalf of Jeric. However, the sheriffs office was unable to locate respondent to serve him with notice of the hearing on the motion | j>nbecause he had moved from his law office. Respondent abandoned his law office without notifying his clients, including Jeric.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.16(d), 3.2, and 8.4(d).
 

 Count XV— The Walker Matter
 

 Shortly after August 24, 2007, Travon Walker hired respondent to represent him in a criminal matter. Mr. Walker paid a total of $3,000 towards respondent’s $8,500 fee. Respondent agreed to allow Mr. Walker to pay the balance at a rate of $200 per month. Respondent filed motions and appeared in court on Mr. Walker’s behalf. Thereafter, respondent’s office staff called Mr. Walker to demand additional payments, despite the payment arrangement. Some time in late 2007, respondent abandoned his law office with notifying his clients, including Mr. Walker.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.16(d), 3.2, and 8.4(d).
 

 Count XVII
 
 — The
 
 Failure to Cooperate Matter
 

 Copies of the complaints associated with Counts II-XVI were forwarded to respondent via certified mail, all of which were returned marked “Unclaimed,” “Refused,” or “Vacant.” Copies of the complaints sent to an additional known address for respondent via regular mail were not returned.
 

 The ODC’s investigators also made several attempts to serve respondent with copies of the complaints and subpoenas compelling him to provide a sworn statement. These attempts were unsuccessful because respondent was not at the ad
 
 *173
 
 dress, or in at least one instance, was present but refused to answer the door.
 

 |¡>iThe ODC alleged respondent’s conduct violated Rule 8.1(c) of the Rules of Professional Conduct.
 

 Hearing Committee Report
 

 As previously indicated, respondent failed to answer the formal charges in 08-DB-088. Accordingly, the factual allegations were deemed admitted. After considering the ODC’s deemed admitted submission, the hearing committee determined the following was proven by clear and convincing evidence: respondent failed to comply with the minimum requirements of continuing legal education, in violation of Rule 1.1(b) of the Rules of Professional Conduct; he failed to comply with rules regarding payment of bar dues and the disciplinary assessment, in violation of Rule 1.1(c); he neglected legal cases, in violation of Rule 1.3; he failed to reasonably communicate with clients, in violation of Rule 1.4, he failed to return unearned fees or render accountings, in violation of Rules 1.5(f)(5) and 1.16(d); he failed to expedite litigation, in violation of Rule 3.2; he failed to properly supervise a non-lawyer assistant, in violation of Rule 5.3; and he engaged in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d). However, the committee found the ODC failed to prove respondent deliberately or intentionally failed to cooperate with a disciplinary investigation, in violation of Rule 8.1(c).
 

 The committee also noted aggravating factors, including a dishonest or selfish motive, a pattern of misconduct, and illegal conduct. The committee did not note any mitigating factors.
 

 After considering this court’s prior jurisprudence involving similar misconduct, the committee determined “[a] very stiff sanction is generally warranted for a | ¡^combination of violations such as those at hand.” Accordingly, the committee recommended respondent be permanently disbarred.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s report in 08-DB-088.
 

 Disciplinary Board Recommendation 08-DB-010 & 08-DB-088
 

 After reviewing these consolidated matters, the disciplinary board determined that the factual findings of both hearing committees are supported by the factual allegations asserted by the ODC in the formal charges and/or by the evidence submitted in support of the deemed admitted factual allegations. The board also determined the committees correctly applied the Rules of Professional Conduct, with one exception. In 08-DB-088, the committee found respondent did not violate Rule 8.1(c) because the ODC failed to prove respondent “deliberately or intentionally failed to cooperate” with the ODC’s investigation. However, the board noted that the language of Rule 8.1(c) does not mandate a finding of intent. Therefore, the board determined respondent violated Rule 8.1(c) by either failing to update his registration address or failing to accept mail at his registration address, both of which constitute at least a negligent violation of the rule. The board determined the other rule violations are amply supported by specific deemed admitted factual allegations.
 

 The board also determined respondent knowingly, if not intentionally, violated duties owed to his clients, the legal system, and the legal profession. Respondent essentially abandoned his law practice at the end of 2007. He caused significant harm to several clients by failing to return unearned fees after abandoning those clients. He also left several criminal clients unrep
 
 *174
 
 resented without notifying those clients or | ^the courts. He harmed the legal system by failing to appear at hearings without notice to the courts and by practicing law while ineligible. He also harmed the legal system by failing to maintain his MCLE and registration requirements, which caused the ODC to expend additional resources in its investigations. After considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined the baseline sanction is disbarment.
 

 The board found the following aggravating factors present: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victim, substantial experience in the practice of law (admitted 1989), and indifference to making restitution. The board found no mitigating factors present.
 

 Turning to the issue of an appropriate sanction, the board determined respondent failed to return unearned fees to his clients, which this court has held constitutes conversion of those funds.
 
 See In re: Deshotels,
 
 03-2060 (La.12/12/03), 863 So.2d 507. Respondent also intentionally converted money owed to third parties. Therefore, the board determined Guideline 1 of the permanent disbarment guidelines, which states that permanent disbarment may be warranted for “[r]epeated or multiple instances of intentional conversion of client funds with substantial harm,” applies in this matter. The board also cited
 
 In re: Alleman,
 
 07-2060 (La.5/30/08), 982 So.2d 814, in which this court permanently disbarred an attorney, based on Guideline 1, who “neglected numerous legal matters, abandoned his law practice, and failed to refund unearned fees and unused costs, converting those funds to his own use.” The board noted respondent engaged in conduct similar to that found in
 
 Alleman.
 
 However, he also engaged in the unauthorized practice of law on several occasions by practicing law while ineligible. In
 
 In re: Pitre,
 
 05-0853 (La.6/17/05), | ¾903 So.2d 1130, this court disbarred an attorney who repeatedly practiced law while ineligible.
 

 Under these circumstances, and given the egregious and extensive nature of respondent’s misconduct, the board recommended respondent be permanently disbarred.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57.
 

 In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations.
 
 In re: Donnan,
 
 01-3058 (La.1/10/03), 838 So.2d 715.
 

 12¡jln this consolidated matter, the deemed admitted facts establish respon
 
 *175
 
 dent neglected legal matters, failed to communicate with clients, failed to refund unearned fees, failed to pay third-party medical providers, issued an NSF check from his trust account, practiced law while ineligible, refused to return an unearned fee and documents to a client until the client dismissed his disciplinary complaint, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, gave false statements to the ODC, and failed to cooperate with the ODC. The deemed admitted factual allegations and/or the documentary evidence submitted in support of them indicate respondent violated the Rules of Professional Conduct as alleged in the formal charges, with one exception. The record does not support a finding that respondent violated Rule 8.4(c) in the Ball matter. Furthermore, in the Weathersby, Lafayette, and White matters, all of which occurred after 2004, respondent violated Rule 1.5(f)(5) and not Rule 1.5(f)(6) as alleged by the ODC.
 
 [4]
 

 With respect to the unearned fees, the record reflects respondent failed to account for or refund unearned fees totaling $51,525. Additionally, respondent failed to remit payments to third-party medical providers totaling $4,344, and he wrote a $5,750 trust account check that was returned due to insufficient funds in the account.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and [ ¡^mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the legal profession. He caused significant monetary harm to his clients and third-party medical providers. He also harmed the legal system and the legal profession. His behavior towards Mr. Breaux was particularly reprehensible, and he engaged in dishonest conduct on numerous occasions. The baseline sanction for this type of misconduct is disbarment.
 

 The record supports the aggravating factors found by the disciplinary board. There are no mitigating factors present. Accordingly, a downward deviation from the baseline sanction is unwarranted.
 

 Therefore, the only issue for our consideration is whether respondent’s conduct is so egregious as to warrant his permanent disbarment from the practice of law. We agree with the board that Guideline 1 of the permanent disbarment guidelines listed in Appendix E of Supreme Court Rule XIX is applicable in this matter. In accepting fees, then failing to do any substantial work, respondent converted more than $51,000 in client funds. He has abandoned his law practice and appears to have no intention of ever providing refunds of the unearned fees. In
 
 In re: Alleman,
 
 07-2060 (La.5/30/08), 982 So.2d 814, and
 
 In re: Straub,
 
 08-2354 (La.1/30/09), 999 So.2d 1123, we permanently disbarred attorneys for similar conduct. Additionally, respondent failed to remit funds to third-party medical providers and wrote an NSF check on his trust account.
 

 
 *176
 
 Accordingly, we will adopt the disciplinary board’s recommendation and permanently disbar respondent. We further order respondent to make restitution to his victims.
 

 |27DECREE
 

 Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that the name of Richard Bates, Louisiana Bar Roll number 19476, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent render an accounting to his clients subject of the formal charges and make restitution of any unearned fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Chief Justice Kimball not participating in the opinion.
 

 [1]
 

 . On May 3, 2006, respondent received an admonition for practicing law during this MCLE ineligibility period.
 

 [2]
 

 . The obligation to refund an unearned fee was set forth in Rule 1.5(f)(6) prior to the 2004 amendments to the Rules of
 
 Professional
 
 
 *165
 
 Conduct; however, after 2004, this requirement is contained in Rule 1.5(f)(5).
 

 [3]
 

 . On May 9, 2007, respondent forwarded to the Board a cashier’s check in the amount of $5,775, which represented payment of the original amount, plus a $25 NSF fee.
 

 [4]
 

 . See note 2,
 
 supra.